Charles T. **DOUDS**, Regional Director of The Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

**KNITGOODS WORKERS' UNION LOCAL NO. 155, INTERNATIONAL LADIES' GARMENT WORKERS' UNION, AFL–CIO,** Respondent.

Civ. No. 17204.

United States District Court E. D. New York.

Feb. 19, 1957.

Kenneth C. McGuiness, San Francisco, Cal., by Jacques Schurre, Washington, D. C., for petitioner.

Lieberman, Katz & Aronson, by Marshall L. Rosenberg, New York City, for respondent.

RAYFIEL, District Judge.

The petitioner, as a Regional Director of the National Labor Relations Board, hereinafter referred to as the Board, filed a petition under Section 10($l$) of the National Labor Relations Act, 29 U.S.C.A. § 160($l$) hereinafter referred to as the Act, for appropriate injunctive relief pending the Board's final determination of charges filed by Packard Knitwear, Inc., hereinafter referred to as Packard, alleging that the respondent had engaged and was then engaging in acts and conduct violative of Section 8(b) (4) (C) of the Act, 29 U.S.C.A. § 158 (b) (4) (C).

The petition alleges, *inter alia,*

a. that the respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10($l$) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160($l$);

b. that pursuant to the provisions of the Act, Packard filed charges with the Board on December 3, 1956, which were supplemented by amended charges filed on December 6, 1956 and December 17, 1956, alleging that the respondent had engaged and was then engaging in unfair labor practices, within the meaning of Section 8(b) (4) (C) of the Act; and

c. that the said charges and amended charges were referred to the petitioner, investigated by him or under his supervision, and as a result thereof he has reasonable cause to believe that the second amended charge is true and a complaint of the Board thereon should issue against the respondent.

A hearing was held on January 22, 1957, at which testimony was adduced and documentary and photographic evidence received. From the pleadings and the evidence, the facts, as I find them, are as follows: Packard was incorporated in February, 1956, and in March, 1956 rented a loft in the building known as No. 49 Wyckoff Avenue, Brooklyn, New York, in this District, where it established a plant for the manufacture of ladies' sweaters. During the month of March it hired several maintenance employees who were engaged in the preparation of the plant and machinery for production. In April the first production employees were hired, their number being increased as time went on.

During the first or second week in April Arthur M. Jacobson, an organizer for the respondent, accompanied by a Mr. Levinson, one of its business agents, called at the Packard plant and engaged in conversation with Benjamin Lippman, its president. They told him that they had learned that a knitgoods plant had been established at the premises and that they wanted to organize its employees. When Lippman informed them that Packard then had no employees in production they left.

Several days thereafter respondent's representatives began to picket the premises, first covering two entrances to the building, and later confining their activities to the main entrance. The number of pickets varied, there being two on some days and three on others. On the first day the signs carried by the pickets bore a legend to the effect that Packard Knitwear was on strike. Lippman complained to a police sergeant about the sign. Within a day or two thereafter the pickets were directed by a Mr. Nelson, manager of the respondent union, to discontinue the use of said signs, and they have since carried signs bearing the legend: "Workers of Packard Knitwear Inc. join Knitgoods Workers Union enjoy better working conditions. Knitgoods Workers Union Local 155 International Ladies' Garment Workers Union A. F. of L."

On or about October 10, 1956, some six months after the commencement of picketing, an election by secret ballot was conducted by the Board to determine the collective bargaining representative of the production and maintenance employees of Packard, and as a result thereof Novelty Knitwear Workers Union, Independent, hereinafter referred to as Novelty Workers, a labor organization within the meaning of the Act, received a majority of the votes cast. On October 18, 1956, the petitioner, on behalf of the Board, duly certified Novelty Workers as the exclusive bargaining representative of "All production and maintenance employees employed at the Brooklyn, New York plant of Packard, excluding office clericals, plant clericals, guards, watchmen and supervisory employees defined in the Act."

The record established that the sales of Packard for the year 1956 aggregated $285,000, of which $95,000 was shipped outside of the State of New York.

Save for a few minor incidents devoid of violence, threats or other improper conduct, the only testimony offered by petitioner respecting acts of respondent's representatives, aside from picketing, occurring prior to certification, was that of Frances Trowell, an employee of Packard. She testified that a picket had used abusive language to her. Her testimony was categorically denied. I found her testimony far from convincing.

It is true that some changes were made in the times and methods of deliveries by several of Packard's suppliers, but they were not occasioned by any acts or conduct on the part of the respondent which could properly be characterized as unfair labor practices. The fact is that there has been no appreciable interruption or delay in deliveries to Packard by its suppliers. And it may be added that all such changes were effected long prior to October 18, 1956, the date of Novelty Worker's certification.

Section 8(b) (4) (C), supra, provides that "It shall be an unfair labor practice for a labor organization or its agents.

* * * to engage in, or to induce or encourage the employees of any employer to engage in, a strike, or a concerted refusal in the course of their employment to use, manufacture, process, transport or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is * * * forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees *if another labor organization has been certified as the representative of such employees under the provisions of section 9.*"

There is no proof that the respondent, since the certification of Novelty Workers, has engaged in any activity other than what appears from the record to have been peaceful picketing. As a matter of fact, counsel for the petitioner stated (S.M.P. 156) that there is nothing in the record to indicate that the respondent's pickets engaged in any overt acts since the certification of Novelty Workers. At P. 154, S.M., he said, referring to the post-certification period, "For that matter, then, I might say right here and now that there is nothing in the evidence adduced at this hearing as to any activities that the pickets engaged in other than picketing."

It is the petitioner's contention that *"an* object, if not the primary object" of the picketing is to compel Packard to recognize and bargain with the respondent. While the pickets, early in their activities, may have manifested more zeal than their assignment required, I find nothing in the record to indicate that they at any time accompanied their picketing with conduct designed to compel Packard to recognize and bargain with the respondent. Further, the record, as attested by petitioner's counsel, establishes beyond doubt that since October 18, 1956 the respondent has engaged in no activity whatsoever except picketing, and that appears to have been peaceful.

The petitioner argues that the picketing, in and of itself, constitutes unlawful inducement and encouragement of employees to engage in a strike or a concerted refusal to work; that it is an appeal to the minds of employees not to work behind picket lines. I disagree. The fact is that there was no evidence that a single employee of Packard left its employ, or engaged in a strike or slowdown, during the ten-month period between the commencement of picketing and the hearing herein. It is true that the employees of one or more of Packard's suppliers have refused to cross the picket line, and have altered the time or manner of their deliveries, but the deliveries have been and are being made. And it may be added that the unwillingness of said employees to cross the picket line has not been prompted by violence, threats or other improper conduct on the part of respondent's agents.

The right to engage in peaceful picketing is supported by Section 8(c) of the Act, Section 158(c) of Title 29 U.S.C.A., which reads as follows: "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

There is no doubt that the respondent hopes, and probably expects, that, as Judge Dawson said under similar circumstances of the respondent in the case of Douds v. Local 50, etc., D.C. 127 F.Supp. 534, the ultimate objective of its picketing is to be recognized as the bargaining representative of Packard's employees, but the Court of Appeals, in affirming Judge Dawson's decision denying a preliminary injunction in that case, said: "We are not prepared to hold that all post-certification picketing is forbidden." Douds v. Local 50, etc., 2 Cir., 224 F.2d 49, 51.

Since I find nothing in the record, particularly since the certification of Novelty Workers, to justify the conclusion that the respondent has sought to induce or encourage the employees of

Packard or its suppliers to engage in a strike or concerted refusal in the course of their employment to use, manufacture, process or transport goods or perform services, there is no reason to discuss the matter of objectives.

Accordingly, the motion for a preliminary injunction herein is denied.

Submit proposed findings of fact, conclusions of law and order in conformity herewith.