179 F.Supp. 481 (1960)
Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,
v.
LOCAL 239, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.
Civ. No. 20331.
United States District Court E. D. New York.
January 7, 1960.
*482 *483 Ivan C. McLeod, Regional Director of the Second Region, N.L.R.B., for petitioner. Jacques Schurre, Washington, D. C., of counsel.
Katz & Wolchok, New York City, for respondent. Charles R. Katz, New York City, of counsel.
Bruno Baratta, Mineola, N. Y., for Charging Party, Stan-Jay Auto Parts and Accessories Corp.
BARTELS, District Judge.
This proceeding comes before the Court upon the petition filed by the Regional Director of the National Labor Relations Board pursuant to § 10(l) of the National Labor Relations Act, as amended, § 160(l) of 29 U.S.C.A. § 151 et seq. (herein referred to as the "Act") for a temporary injunction pending a final adjudication by the Board of a charge filed with it by Stan-Jay Auto Parts and Accessories Corporation (herein called "Stan-Jay"). The charge alleges that the respondent is engaged in an unfair labor practice within the meaning of § 8(b) (7) (C) of the Act (effective November 13, 1959), which section proscribes certain recognition and organizational picketing. The petition is predicated upon the conclusion of the Board that there is reasonable cause to believe that the respondent has engaged in the unfair labor practice charged and that a complaint of the Board based upon the charge should issue. Stan-Jay filed its charge on November 23, 1959 and on December 2, 1959 an Order to Show Cause why injunctive relief should not be granted was signed by this Court, returnable on December 10, 1959, when a hearing was held. At the hearing the respondent claimed that the preliminary investigation required to be made by the Board was not alleged and that the petition was jurisdictionally defective. Evidence, however, was adduced to show that a preliminary investigation had been made and permission was accordingly granted to amend the petition to conform to the proof. Testimony was heard from Allen Jay, the president of Stan-Jay, and from Mac Sherman, the recording secretary of the respondent. Krieger, the business agent of the respondent who had negotiations with Allen Jay, was not called as a witness.
Stan-Jay is located at Long Beach, Long Island, and is in the business of selling and distributing automotive parts and accessories and is thus engaged in commerce within the meaning of the Act. It employs five persons, a female bookkeeper and four men who wait on the counter, make telephone calls for merchandise, stock shelves, load delivery wagons and make deliveries to customers. Respondent does not represent any of Stan-Jay's employees and has not filed for an election under the Act.
On September 14, 1959, Stan-Jay was visited by Sam Krieger, the business agent of the respondent, accompanied by Mac Sherman, its recording secretary, and a third person. At that time Krieger informed Stan-Jay that there was a drive on and its "turn had come" for a contract and the respondent meant to have a contract. Allen Jay on behalf of Stan-Jay refused to sign a contract because he claimed the Union had nothing to offer Stan-Jay's employees which they did not already have. Krieger told Allen Jay "If you don't join up we will *484 throw a picket line in front of the place here and you get no merchandise and no deliveries." Krieger then left a proposed contract, containing recognition and Union shop clauses, with Allen Jay for signature but Allen Jay never signed it. There was also testimony that after the picketing began on September 21st, every truck bringing supplies to Stan-Jay had been turned away and that thereafter and up to the present time Stan-Jay has been compelled to pick up supplies in its own truck.
On September 21, 1959, four people picketed Stan-Jay's store in Long Beach, carrying signs (referred to herein as sign No. 1) with the following legend:

LOCAL 239 I. B. OF T.

WANTS THE EMPLOYEES OF STAN-JAY 452 LONG BEACH BOULEVARD, LONG BEACH

TO JOIN THEM TO GAIN UNION WAGES, JOB SECURITY AND WORKING CONDITIONS.

AUTOMOTIVE PARTS AND SPECIALTY PRODUCTS DRIVERS, HELPERS, WAREHOUSEMEN, TEAMSTERS

210-01 NORTHERN BOULEVARD, L. I.
The picketing has continued from September 21, 1959 to date with the exception that only two pickets were used on October 26th and thereafter. There was a substitution of signs carried by the pickets on October 27th and again some time after November 13th. Stan-Jay claims that the second sign (referred to herein as sign No. 2), reading as follows:

LOCAL 239 I. B. OF T.

WANTS THE EMPLOYEES OF STAN-JAY IS STINGY 452 LONG BEACH BOULEVARD, LONG BEACH

TO JOIN THEM TO GAIN UNION WAGES, JOB SECURITY AND WORKING CONDITIONS.

AUTOMOTIVE PARTS AND SPECIALTY PRODUCTS DRIVERS, HELPERS, WAREHOUSEMEN, TEAMSTERS

210-01 NORTHERN BOULEVARD, L. I.
was used from October 27th to about the end of November or the first part of December and that from the first part of December to date a third sign (referred to herein as sign No. 3) was used, reading as follows:
 TO THE
 PUBLIC
 PLEASE BE ADVISED
 STAN JAY
 AUTO PARTS
 DOES NOT
EMPLOY MEMBERS OF, NOR HAS A CONTRACT WITH ANY LABOR UNION INCLUDING LOCAL 239 I. B. OF T.
The respondent claims that since November 13th the only sign carried by the pickets was sign No. 3.
After November 13th Krieger had another conversation with Allen Jay and that was on November 20th, after Stan-Jay had brought a load of mufflers and tailpipes in its own truck to its place of business in front of the pickets. At that time the discussion began by each side claiming to have won the last court proceeding decided by this Court on November 17th, involving a secondary boycott injunction. At the same time Krieger again mentioned the proposed contract with respondent containing recognition and Union shop clauses, and stated that it would be an easy contract requiring only two men to join the Union. The recording secretary of the respondent admitted that respondent never notified Stan-Jay that it had withdrawn its previous demand for recognition and never notified Stan-Jay that it was no longer interested in organizing employees of Stan-Jay. The respondent explains this by stating that it never made any demands for Union recognition prior to November 13th.
It is unnecessary to repeat the text of § 10(l) of the Act granting this Court jurisdiction to decree such injunctive relief as it deems "just and proper". It has been repeated and interpreted by many decisions. Its purpose is to enable the Court under certain circumstances to preserve the status quo pending the final adjudication by the Board of a charge of unfair labor practice. *485 Schauffler v. United Association of Journeymen, 3 Cir., 1955, 218 F.2d 476, 480, certiorari denied 1956, 352 U.S. 825, 77 S.Ct. 34, 1 L.Ed.2d 48. Before the Board may petition this Court for appropriate injunctive relief, the charge must be investigated and after a preliminary investigation the Board must have "reasonable cause to believe such charge is true and that a complaint should issue". Once the petition is filed it is the role of this Court to ascertain whether the Board had "reasonable cause to believe" that the charge was true. Douds v. Milk Drivers and Dairy Employees Union, 2 Cir., 1957, 248 F.2d 534, 538; Alpert v. Truck Drivers, D.C.Me.1958, 161 F.Supp. 86. No criteria is set forth in the statute for determining whether the Board had such "reasonable cause to believe" and the Court is remanded to the same principles employed in the exercise of its discretion for injunctive relief in similar cases. It has permissive range to exercise its discretion to grant or to deny its writ. United Brotherhood of Carpenters and Joiners of America, Dist. Council of Kansas City, Mo., and Vicinity, A. F. of L. v. Sperry, for and on Behalf of N. L. R. B., 10 Cir., 1948, 170 F.2d 863, 869. In other words, it does not rubberstamp the Board and automatically issue an injunction. Alpert v. United Steelworkers of America, D.C. Mass.1946, 141 F.Supp. 447; Douds v. Knitgoods Workers' Union, D.C.N.Y., 1957, 148 F.Supp. 615. Nor, in order to grant relief, is it necessary for the Court to find that the charges filed are true and that, in fact, there has been a violation of the Act. Penello v. Milk Drivers and Dairy Employees Local Union No. 246, D.C.Md.1957, 156 F.Supp. 366, 368; Madden v. International Organization of Masters, Mates & Pilots, 7 Cir., 1958, 259 F.2d 312, certiorari denied 1958, 358 U.S. 909, 79 S.Ct. 236, 3 L.Ed.2d 229; Douds v. Milk Drivers and Dairy Employees Union, supra. Similarly, the denial of injunctive relief at this stage of the proceeding is not a judicial indication that the charges filed are untrue. Compare, Alpert v. United Steelworkers of America, supra, and N. L. R. B. v. United Steelworkers of America, 1 Cir., 1957, 250 F.2d 184.
The primary question before this Court is the determination whether the Board had "reasonable cause to believe" that there has been a violation of the Act. In making this determination the Court not only appraises the general scope of the facts but also such authorities as there may be which are applicable to those facts. Alpert v. United Steelworkers of America, supra, 141 F.Supp. at page 450. It has been held that the requirement placed upon the Board is met by a showing that there is sufficient evidence to "demonstrate that there was a basis for the Board's finding". Douds v. International Longshoremen's Association, 2 Cir., 1957, 242 F.2d 808, 810.
In the light of the above principles, the application of the law to the facts in this case may now be considered. The unfair labor practice charged is a violation of § 8(b) (7) (C) of the Act, which proscribes certain recognition and organizational picketing.[1] This section, which *486 became effective on November 13, 1959, provides that in order to constitute an unfair labor practice there must be "picketing" and an object thereof must be "forcing or requiring" an employer to recognize or bargain with a labor organization "where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing * * *".
Respondent submits, among other arguments, that since § 8(b) (7) (C) did not become effective until November 13, 1959, all acts and picketing before that date cannot be considered and are immaterial under § 707 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 153 note (hereinafter referred to as the 1959 Act); that the only type of picketing that was conducted after November 13th was informational picketing which is protected not only under the proviso of § 8(b) (7) (C) but also by the First Amendment to the Constitution; that since that type of picketing was lawful it could not have the illegal objective of forcing or requiring Stan-Jay to recognize respondent; and that it was impossible for the respondent to file a petition under § 9(c) within a reasonable time since the respondent only had the period from November 23rd (the date the charge was filed with the Board) and December 2nd, 1959 (the date of the Order to Show Cause) within which to file such a petition.
Involving as it does the application of this new section of the Act to a special set of circumstances, the case presents a number of problems not readily solved by a reading of the 1959 Act. Respondent began picketing Stan-Jay on September 21, 1959 and has continued such picketing to date. Before November 13th the signs carried by the pickets, as above indicated, requested Stan-Jay's employees to join the Union, whereas after November 13th the signs carried by the pickets simply informed the public that Stan-Jay neither employed members of or had a contract with a labor union including the respondent. Section 707 of the 1959 Act states, in part, that "no provision of this title shall be deemed to make an unfair labor practice, any act which is performed prior to such effective date which did not constitute an unfair labor practice prior thereto." Thus the picketing by respondent prior to November 13th cannot be construed as an unfair labor practice or as a part of an unfair labor practice after November 13th. It does not follow, however, that such picketing before November 13th cannot be examined to determine the object or character of the picketing by respondent after November 13th. A mere change in the wording of the signs carried by the pickets does not necessarily change the objective of the picketing. To properly determine the objective of the respondent's present activities, all the circumstances surrounding the picketing both before and after November 13th should be examined. This violates neither the wording nor the spirit of § 707 of the 1959 Act.
Objectives can and do change and it is natural to assume that one intends to comply with the law when that law is changed because "An unlawful purpose is not lightly to be inferred." N. L. R. B. v. McGahey, 5 Cir., 1956, 233 F.2d 406, 413. See, also, N. L. R. B. v. Local 50, Bakery and Confectionery Wkrs., 2 Cir., 1957, 245 F.2d 542, 547. Before November 13th there can *487 be no doubt from the facts in this case that the picketing was recognition or organizational picketing. Because of certain activities in this connection, injunctive relief under § 10(l) of the Act was granted against respondent by this Court on November 17, 1959, enjoining the respondent from engaging in a secondary boycott in violation of § 8(b) (4) (A) and (B) of the Act before it was amended. Respondent argues that these prior events are immaterial because there is no warrant for the presumption that the original object of the picketing survived the amendment of the Act on November 13th, particularly in view of the change in signs, citing as authority for its position N. L. R. B. v. Local 50, Bakery and Confectionery Wkrs., supra, 245 F.2d at page 547. There are factors in the present case which differentiate it from that case. There Judge Lumbard said (page 547):
"* * * In the absence of any independent supporting evidence, there is no warrant for the conclusion that Local 50's original objective of immediate recognition as exclusive bargaining agent survived the certification of the Association. The fact that Local 50 sought recognition at a time when it was lawful to do so should not raise a presumption that it also sought recognition when it had become unlawful to do so." [Footnote by court omitted]
Here there is present "independent supporting evidence" that the original objective survived as witnessed by the demand made by the Union on November 20th for the execution of a contract containing recognition and Union shop clauses. The Union admits that after November 13th it did not withdraw its original demand for recognition made on September 14, 1959, alleging that it never made a demand. But the facts belie that allegation. Moreover, Stan-Jay is still subjected to the necessity of picking up and making deliveries in its own truck, a condition which, although created by the picketing prior to November 13th, has survived to the date of the hearing. Taken as a whole, the record presents a substantial basis of believable evidence that the picketing after November 13th has for an objective the "forcing and requiring" of Stan-Jay to recognize and bargain with the respondent. It is true that this picketing may also be informational or advisory in character and, as such, is permissible by the 1959 Act. However, this is irrelevant if such picketing also has as one of its objectives an unfair labor practice. International Brotherhood of Elec. Workers, Local 501, A. F. of L. v. N. L. R. B., 1951, 341 U.S. 694, 704, 705, 71 S.Ct. 954, 95 L. Ed. 1299; N. L. R. B. v. Denver Bldg. & Const. Trades Council, 1951, 341 U. S. 675, 689, 71 S.Ct. 943, 95 L.Ed. 1284; nor is it necessary that the forbidden objective be attained. N. L. R. B. v. Associated Musicians, 2 Cir., 1955, 226 F.2d 900, 904, 905, certiorari denied 1956, 351 U.S. 962, 76 S.Ct. 1025, 100 L.Ed. 1483. Respondent cites the proviso in § 8(b) (7) (C) of the Act, as amended, also the First Amendment to the Constitution and Chauffeurs, Teamsters and Helpers Local Union 795 v. Newell, 1958, 356 U.S. 341, 78 S.Ct. 779, 2 L.Ed.2d 809 and Thornhill v. State of Alabama, 1940, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093, to justify its alleged informational picketing after November 13th. The fallacy of respondent's position is based upon the assumption that such picketing is solely informational. Neither the proviso in § 8(b) (7) (C), the First Amendment to the Constitution, nor the authorities cited justify non-coercive speech or picketing in furtherance of an unlawful objective as described in the Act as amended. Congress did not intend by the general language in the proviso in § 8(b) (7) (C) to sanction that which it so expressly outlawed in the specific language immediately preceding the proviso. See, International Brotherhood of Elec. Workers, Local 501, A. F. of L. v. N. L. R. B., supra, 341 U. S. at pages 704, 705, 71 S.Ct. at pages 959, 960; N. L. R. B. v. Denver Bldg. & Const. Trades Council, supra, 341 U. S. at pages 690, 691, 71 S.Ct. at page 952.
*488 The question next presented is whether the respondent had a reasonable period within which to file a petition under § 9(c) of the Act. The 1959 Act provides that such picketing is an unfair labor practice where it has been conducted "without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing". The respondent claims that it could not file such a petition before a charge of unfair labor practice had been filed with the Board and since such a charge had not been filed until November 23rd it only had nine days thereafter, before the date of the Order to Show Cause, within which to file its petition. There are two assumptions upon which this argument is based, (1) that the date from which a reasonable time begins must be after November 13th regardless of the fact that picketing commenced before that date, and (2) that a petition under § 9(c) could not be filed until a charge was filed with the Board. In this case it is unnecessary for the Court to pass upon the validity of the respondent's first assumption. As to the second assumption, there is nothing in the Act to justify the respondent's argument. It is true that the Board amended its Rules and Regulations on November 4, 1959, to provide for an expedited election in those cases where picketing is being conducted for an object proscribed by § 8(b) (7) and a charge alleging a violation of that section has been filed and found meritorious.[2] The filing of such a charge is a prerequisite to an expedited election but is not a prerequisite to the filing of a petition under § 9(c) as set forth in the Act as amended.
This Court must be guided by the terms of the Act and not by the Rules and Regulations of the Board if there is any conflict between the two. The procedure outlined in the Rules and Regulations may have been the result intended by Congress in enacting the 1959 Act, but the wording of the proviso in § 8(b) (7) (C) with respect to an expedited election contains no such prerequisite. Moreover, there is nothing in the Rules and Regulations which forbids or prevents the filing of a petition under § 9(c). Whether or not the election thereafter is expedited is no bar to the filing of a petition. It is clear, therefore, that in accordance with the wording of the 1959 Act, the respondent could have filed a petition under § 9(c) at any time between November 13th and the date of the hearing on December 10th. Respondent was not limited to the date of the Order to Show Cause. This period, approximating twenty-seven days, was a reasonable period within which the respondent could have filed its petition. Assuming the correctness of the respondent's contention that no petition could have been filed before November 23rd, the respondent still had seventeen days before the hearing within which to file, which period in this case was a reasonable period of time for that purpose. See, Elliott v. Sapulpa Typographical Union No. 619, D.C.N.D.Okl., Civil No. 4809, decided December 8, 1959. Upon the record, the Court is of the opinion, therefore, that the petitioner has reasonable cause to believe that the respondent has engaged in an unfair labor practice proscribed by § 8(b) (7) (C) of the Act as amended.
It remains to decide what injunctive relief, if any, shall be just and proper under the circumstances. The relief sought is limited to a prevention of the specific evil which Congress desires to eradicate by the amendment to the Act. "For the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief in these cases." Hecht Co. v. Bowles, 1944, 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754; see, also, Youngstown Sheet & Tube Co. v. Sawyer, 1952, 343 U.S. 579, 609-610, 72 S. Ct. 863, 96 L.Ed. 1153.
*489 The relief requested is necessary to assure the discontinuance of the kind of conduct intended to be enjoined by Congress and falls within the scope of "just and proper" criteria established by the Act as amended. The petition is accordingly granted, and an order may be entered hereon.
NOTES
[1] "§ 8(b) It shall be an unfair labor practice for a labor organization or its agents

* * * * *
"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:
* * * * *
"(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c) (1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.
[2] § 102.73 et seq., Rules and Regulations of the Board, as amended, November 4, 1959, Part II, Federal Register November 7, 1959, page 9112 et seq.