286 F.2d 727
 Ivan C. McLEOD, Regional Director of the Second Region of
the National Labor Relations Board, for and on
behalf of the National Labor Relations
Board, Petitioner-Appellee,
v.
CHEFS, COOKS, PASTRY COOKS AND ASSISTANTS, LOCAL 89, HOTEL
AND RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION,
AFL-CIO, and Dining Room Employees Union, Local 1, Hotel and
Restaurant Employees and Bartenders International Union,
AFL-CIO, Respondents-Appellants.
 No. 228, Docket 26507.
 United States Court of Appeals Second Circuit.
 Argued Jan. 11, 1961.
Decided Feb. 8, 1961.
 
 Jerome B. Lurie, of Boudin, Cohn & Glickstein, New York City, for appellant Chefs, Cooks, Pastry Cooks & Assistants, Local 89, AFL-CIO.
 Benjamin D. Stein, of Pinto & Stein, New York City, for appellant Dining Room Employees Union, Local 1, AFL-CIO.
 Winthrop A. Johns, Asst. Gen. Counsel, N.L.R.B., Washington, D.C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Jerome L. Avedon, Atty., N.L.R.B., Washington, D.C., on the brief), for appellee.
 Before LUMBARD, Chief Judge, and L. HAND and CLARK, Circuit Judges.
 CLARK, Circuit Judge.
 
 
 1
 In McLeod v. Chefs, Cooks, Pastry Cooks and Assistants, Local 89, 2 Cir., 280 F.2d 760, this court, per Smith, J., with Waterman (separately) and Barnes, JJ., concurring, reversed a temporary injunction granted by Dawson, J., D.C.S.D.N.Y., 181 F.Supp. 742, restraining the respondent local unions of restaurant employees from picketing the Stork Club Restaurant in New York City pending the determination of a charge of unfair labor practice brought against them by the Club. The court remanded the case for new findings and for modification of the injunction in accordance with these findings. The injunction below had been issued under and was governed by the terms of the Labor-Management Reporting and Disclosure Act of 1959, particularly the added 8(b)(7)(A-C), 29 U.S.C. 158(b)(7)(A-C). This lengthy provision-- quoted in the opinion-- makes it an unfair labor practice for a union to picket an employer to secure recognition as the bargaining agent of his employees under the circumstances here disclosed, but with this proviso: 'That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.'
 
 
 2
 Picketing for recognitional purposes had been conducted at the Stork Club since January 1957, when, after the passage of this statute and the filing of the charge by the Club, the attorneys for the unions advised them that they could no longer picket in order to gain recognition as bargaining representatives of the employees. So on January 14, 1960, they notified the National Labor Relations Board and the employer that they had withdrawn their demands for recognition, but would continue picketing for the lawful purpose of advising the public; and the picket signs were accordingly changed as the opinion relates. In his earlier opinion Judge Dawson found, however-- and this was the basis for his injunction-- that the respondent unions still had as one of their objectives that of forcing the employer to recognize and bargain with the unions. Our brothers were disturbed lest picketing for informational purposes was being prohibited; and they were at some length in establishing the validity of such picketing under the quoted statute, reviewing the legislative history, and quoting the then Senator Kennedy and Representative Udall in support of its validity. So they held Judge Dawson's finding of union objectives to be 'clearly erroneous,' and stated that 'the injunction should have been tailored to reach only the illegal activity,' 280 F.2d at page 763, that is, only where 'the allowable informational picketing had the effect of inducing other employees not to make deliveries,' and that then it should be declared unlawful 'only to the extent that this mode of disseminating information is proven to have an unlawful effect.' 280 F.2d at page 764. They concluded that there was basis in the testimony for the finding that an effect of the picketing was to induce other employees not to make deliveries, but that this would be the case only at the time when deliveries were to be made and that to enjoin all picketing 'even at times when deliveries would not be made' would seem to carry the scope of the injunction beyond what was contemplated in the Act.
 
 
 3
 The court then went on to say (280 F.2d at page 76): 'In view of the protection which Congress obviously wished to provide for informational picketing by workingmen, we believe that the injunction in the present case, although properly issued, should have been framed so as to curtail only that which ran afoul of the Act. In arriving at this conclusion it is especially significant to note that the nature of the employer's business in this case is such as to afford the opportunity for informational picketing at times when the restaurant is open for business but when deliveries would not be expected. To curtail the dissemination of information by the unions in a manner approved by Section 8(b)(7)(C) at times when only consumers and other members of the general public would be expected to be exposed to this activity, is, we think beyond what was intended to be prohibited by the Act, and unnecessarily raises a constitutional question by its impact on the right of free speech.' And it concluded:
 
 
 4
 'The case is remanded for a determination of the hours during which legal informational picketing can be carried on and for modification of the injunction in accordance with those findings.'
 
 
 5
 It will be noted that our brothers thus found means in the evidence at hand to read some degree of precision into their proposed injunction, notwithstanding the confusing and somewhat self-defeating provisions of the statute. An injunction in the words of the statute would be so lacking in precise warning that the unions could never picket at all with any degree of safety, while on the other hand a court could not make adjudications in contempt with any assurance of fairness or accuracy. Perhaps our colleagues took over what partakes of being a legislative task, but with the prime purpose of making the statute workable; that accomplishment is not here challenged, and we shall accept it according to what we understand to be their intent.
 
 
 6
 The court thus sought affirmative findings to provide the background for the modification which it concluded was necessary to permit of informational picketing. At the hearing below the district court did make findings showing the hours when deliveries were to be expected, to wit, between 1:00 and 3:00 p.m. and between 7:00 and 8:00 p.m. Although inclusion of the evening hours was strongly contested below, the unions do not here challenge these findings, but rather the use made of them in the injunction as drafted. For Judge Dawson used them not affirmatively to establish the period of permissive picketing, but negatively to justify prohibition of all picketing between the stated hours and to allow informational picketing at other times only when it did not have the effect of stopping deliveries. This is in contravention of the careful balancing of interests and the precision of mandate contemplated by our brothers and will have to be modified to reflect their intent. Accordingly the two final paragraphs of the order below stating the acts which are enjoined must be modified to substitute the following provisions, and the action is remanded to the district court for that purpose:
 
 
 7
 'Picketing, or causing Stork Restaurant, Inc., to be picketed, in any way or for any purposes between the hours of 1:00 p.m. and 3:00 p.m., and between the hours of 7:00 p.m. and 8:00 p.m.; provided, however, that nothing herein shall be deemed or construed to prohibit the respondents, or any of them, from picketing for informational purposes only, at all other times.
 
 
 8
 'The court retains jurisdiction to modify this order from time to time as may be required in the interests of justice.'
 
 
 9
 Remanded for modification of the order of injunction.
 
 
 10
 This opinion and the order therein contained have been submitted to the former panel (Waterman, Barnes, and Smith, JJ.) and meet with their approval.
 
 
 11
 LUMBARD, Chief Judge (concurring).
 
 
 12
 As the question of Judge Dawson's modification of the injunction in accordance with the previous opinion of this court is to be governed by that opinion, I concur in the result reached in Judge CLARK'S opinion. At the same time, I think that I should say that if the question comes before us again, after determination by the National Labor Relations Board, I would be persuaded by Judge Dawson's first opinion, reported at 181 F.Supp. 742, rather than by what our brothers said in remanding the case to the District Court as reported at 280 F.2d 760. In short, it seems to me that on the application for the preliminary injunction the Board made out a convincing case that an object of the union's picketing was to compel recognition under circumstances proscribed by 8(b)(7).
 
 
 13
 Moreover, I share the doubts expressed by Judge Waterman in his concurring opinion at 280 F.2d 765-766 that an injunction can properly issue in the absence of a finding of an unlawful objective. But as this point has not been raised by the union, which seems content to have all picketing enjoined for three hours of the day, I concur in the modification of Judge Dawson's order as the modification seems to be in accord with the thrust of the previous opinion of this court and is in accord with what I would find proper assuming that the union's picketing was for a proscribed object.
 
 
 14
 L. HAND, Circuit Judge (dissenting).
 
 
 15
 I vote to affirm.