Salvatore COSENTINO, Regional Director, 14th Region of National Labor Relations Board, for and on behalf of NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CARPENTERS DISTRICT COUNCIL OF ST. LOUIS, AFL–CIO, Respondent.

No. 61 C 314(3).

United States District Court
E. D. Missouri, E. D.

Dec. 7, 1961.

Harry G. Carlson, Regional Atty., St. Louis, Mo., Edgar A. Wren, Washington, D. C., for petitioner.

James K. Cook, Charles A. Werner, St. Louis, Mo., for respondent.

HARPER, Chief Judge.

Petitioner, Regional Director of the 14th Region of the National Labor Relations Board, has filed for a temporary injunction pending final disposition by the Board of a charge filed by Vestaglas, Inc., an Illinois corporation. Vestaglas, which has a sales and installation facili- ty in St. Louis for the sale and installation of prefabricated room additions, charged before the N.L.R.B. that respondent is engaged in unfair labor practices within the provisions of 29 U.S.C.A. § 158 (b) (7) (C).[1] Petitioner alleges there is reasonable cause to believe respondent has violated the Act and prays for the injunction pursuant to 29 U.S.C.A. § 160 (*l*).

The stipulations entered into by the parties establish that respondent has picketed the St. Louis office and place of business of Vestaglas, the jurisdictional amount and the interstate business of Vestaglas is adequate, respondent is a labor organization, a petition to picket under § 159(c) was not filed within the period of time required and the investigation of the charge, required by the Act, has been made. This Court has jurisdiction. By the pleadings, the stipulations and the evidence, the only and sole issue before this Court is whether the Regional Director had reasonable cause to believe there was a violation of the Act. Petitioner contends there was and respondent contends that the picketing falls within the proviso and exception of "educational" or "informational" picketing.

The evidence here shows that Vestaglas hired three laborers who worked in a shop at the rear of its office and who did assembling and installation of room additions to homes. The materials were shipped from Chicago to St. Louis, the business office had salesmen who sold

1. 29 U.S.C.A. § 158(b) "It shall be an unfair labor practice for a labor organization or its agents— * * *

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees: * * *

(C) Where such picketing has been conducted without a petition under sec- tion 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: * * *: Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services."

room additions to homes and the laborers assembled and built the additions. None of the laborers belonged to respondent union. Their work mainly embraced carpentry and some cement, concrete block, roofing and electrical work.

Respondent's representatives called at Vestaglas' place of business and inquired of the manager if these employees were members of a union. The manager stated he did not know and gave them permission to talk to the employees. They learned the employees were not members of a local union and that their pay scale, per hour, was below that established by respondent in this area. The employees testified that respondent's representatives pointed out the pay scale, told them they were losing money by not belonging to a union, that they had "one card" to cover all their work and asked them to join. They further testified that the representatives did not give them any cards to sign, left no literature and made no threats. The employees indicated they were not interested in joining the union, the representatives left and they have never talked to them again.

On July 11, 1961, respondent addressed a letter to Vestaglas (Exhibit 7) advising that their members received a $3.675 basic hourly wage rate and 10¢ per hour for the welfare fund and they believed Vestaglas' employees were performing carpenter and joiner's work and being paid rates below the union scale and had sub-standard working conditions. The letter asked to be informed if the information was correct, would assume silence to confirm the information and, if so, advised the intention of the union to use picket signs, hand out leaflets and otherwise publicize to the public that Vestaglas had sub-standard wages and working conditions; and further stated:

"I wish to make it very clear to you that our Union is not making any demands upon you. We are not claiming to represent any of your employees. We are not in any way requesting or demanding that you ask or suggest in any fashion to any of your employees that they join our Union, or in any other way seek to interfere wit(h) the rights of your employees to decide upon what Union, if any, they desire to have represent them.

"Our picketing and handing of leaflets is in no way intended nor is it an attempt to induce or encourage any of your employees, or employees of employers who either work with your employees, to engage in a refusal to work, transport or otherwise handle or work on any goods, materials, etc. We are not requesting or encouraging any employees to cease performing any services, no(r) is it intended to interfere with any of the work, deliveries or any other activity at the job site.

"We state to you now, and our pickets and people handing out leaflets will state to anyone who may inquire, that we are expressly asking all employees of any employer to continue free ingress and egress at the premises in pursuance of their jobs."

The letter further requested notification if any interference occurred and assured immediate correction if reported, and ended with the following:

"I repeat. We desire only to exercise our right to publicize the substandard wages and working conditions of your employees."

This letter was conveyed by the local manager of Vestaglas to the president of the concern in Chicago. After some discussion and telephone conversations, Vestaglas requested a meeting which was arranged for and held in St. Louis with the president and union representatives present. There is some conflict in the testimony as to what was said at this and subsequent meetings. The president of Vestiglas stated that he requested the meaning of the letter of July 11, and was asked if he had any objections to his men joining the union. He replied that he had no objections and the representatives asked if they could get a contract. He stated that he replied that he would have nothing to do with a contract and they

would have to get one from the men. He further stated there was some discussion about what kind of a card could cover all the duties performed by his employees and was told that if they had respondent's card no other union would bother them. He further testified that he later called the union after the picket was established, asked for the representative by name, but was told he was not present, and then an unidentified voice came over the phone stating, "why don't you fellows join the union?"

Representatives of the union testified that they did not say that one card covered everything, that they never did attempt to get Vestaglas to sign a contract, that they advised the employer that his wages were below the union scale and that they were only interested in educating the public in this regard. They further testified that when they heard nothing further from Vestaglas they placed a picket at the premises.

A Mr. West, an unemployed carpenter and member of respondent, was the sole picket used. He walked only in front of plaintiff's place of business, did not go to the shop at the rear, did not interfere with ingress and egress of the property, did not talk to people, did not take license numbers, and only handed out leaflets to those who would take them.

The leaflets used (Exhibit 3) were in the nature of a notice to the public, advising that the sole purpose of the picket was to inform the public that the employees of Vestaglas did not belong to AFL–CIO and received wages and worked under conditions which were sub-standard to those the union had sought to obtain. It pointed out that it was addressed to the public and not to any employer or employee, that no one was being induced or encouraged to engage in refusal to work, transport or otherwise handle or work on any goods, materials, etc. The placard carried by the picket contained the wording, "Notice to the public! Vestaglas, Inc. employees do not belong to AFL–CIO and have sub-standard wages and working conditions * *

Carpenters' District Council of St. Louis".

The evidence further showed that the union representative took the picket West to the police station and advised the chief of police of the purpose and nature of intended picketing. He then took him to the premises and gave him written instructions (Exhibit 6) which they both signed. The picket retained a copy of the instructions, had a handful of circulars, hung the placard over his chest and back and picketed daily Monday through Saturday. The evidence clearly shows no violence, threats, coercion, vulgarity, or intimidation in any of the conduct or acts of the picket while in front of Vestaglas premises. The instructions given to the picket emphasized the fact that he should not interfere with the business or with people seeking to enter or leave the premises, that he should be courteous and polite at all times, never force a leaflet on any person and should not answer any questions but refer any inquiry to the union.

A representative of the N.L.R.B. took a statement from West. The representative wrote it and West signed it. In the statement West said that he was told the intention of the picket was to get them "to sign up". In his testimony West stated that he had said it was his "impression we was trying to organize them" and that the officer of the union who placed him on the job never explained to him that they were trying to organize, but, in fact had said, "we are not trying to organize". He further testified that when asked by the local manager of Vestaglas how long he intended to stay on the picket line that he facetiously said, "a hundred years or until I'm a hundred years old" and he denied having said he would picket a day, a week or six months until they joined up.

▪ The purpose of 29 U.S.C.A. § 160(*l*), is to enable the Court under certain circumstances to preserve the status quo pending the final adjudication by the Board of a charge of unfair labor practice. McLeod v. Local 239, International

Brotherhood of Teamsters, D.C., 179 F. Supp. 481. Petitioner does not have the burden of establishing that an unfair labor practice was in fact committed but the sole question before the Court is whether there is reasonable cause to believe the elements of unfair labor practice are present. Schauffler, for and on Behalf of N.L.R.B. v. Local 1291, International Longshoremen's Ass'n, 3 Cir., 292 F.2d 182. The determination of reasonable cause must therefore be based upon the facts of each case.

■ As the statute exempts informational picketing,[1] if the picketing in fact is entirely informational in both material form and purpose, no violation could exist and there would be no basis for reasonableness and the petition should fail. Getreu v. Bartenders Local 89, 46 LRRM 249. Should there be two immediate objects of picketing, i. e., informational and recognitional-organizational, then such would be a violation for the reason that the restricted objectives need not be the sole objective. Cosentino, for and on behalf of N. L. R. B., v. Local 618, Automotive, etc., Employees, 200 F.Supp. 492, E.D.Mo.1960; Brown, etc. v. Department and Specialty Store Employees, D.C., 187 F.Supp. 619. But, if the picketing is informational only, no violation could result. Cosentino v. Automotive Employees, supra; Getreu v. Bartenders Union, supra; McLeod v. Local 239, International Brotherhood of Teamsters, supra; McLeod v. Chefs, Cooks, Pastry Cooks and Assistants, Local 89, 2 Cir., 286 F.2d 727.

If the picketing, leaflets and letters used do not support petitioner's burden, then we can only look to the personal contacts by respondent and the employer. This was done in Brown v. Department Store Employees, supra. Using these decisions as a guide, let us look to the facts in the instant case.

Respondent's representatives called on the local manager of Vestaglas, asked if their employees were members and for permission to speak to them. The permission was granted and they ascertained that they were not members of respondent or any affiliate and their hourly wage scale was less than that established in this area by respondent. At this point there was no attempt to have Vestaglas' employees join the union. All that was done was that information was obtained and explanations were made. Respondent's representative then reported to his superior and the letter (Exhibit 7) was sent to Vestaglas.

A reading of this letter, especially the provisions hereinbefore quoted, can lead but to the conclusion that its intent was informational picketing. Subsequent contacts between the representatives of Vestaglas and respondent were at the request of Vestaglas. While there is some dispute as to what was actually said on these occasions, it is clear and conclusive to the Court that no contracts were offered or submitted and no request to organize was made.

It is also clear from the testimony before the Court that the actual picketing was at all times peaceful, there was no interference with customers of Vestaglas, the picket did not talk to anyone and did not force handbills on anyone and the sign he wore carried out the informational theme. The discrepancies between the statement made by the picket and his testimony is understood by the Court's observation of the witness upon the stand. From his overall conduct, appearance and manner of testifying, the Court has no reason to disbelieve his testimony given under oath.

It is this Court's conclusion that from the whole of the testimony in this cause, the object of the picketing in this instance was educational and informational. Further, the actions taken by respondent and its representatives were and are entirely consistent with this purpose. There was no act or conduct inconsistent with this purpose and, therefore, the Court concludes that the picketing was solely informational.

I. See Note 1 on Page 113.

Having reached this conclusion on the facts, the statute itself and the law is clear that informational picketing is excluded from the Act. This being true, there could be no reasonable basis for belief that a violation exists and the injunctive procedures to maintain the status quo should fail. An order will be entered finding against the petitioner on his petition and denying the injunctive relief prayed for.