Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

NATIONAL MARITIME UNION OF AMERICA, AFL-CIO, Respondent.

United States District Court
S. D. New York.
Dec. 30, 1957.

6. 244 F.2d at 686.

John J. Cuneo, Chief Law Officer, N.L.R.B., New York City, for petitioner.

Cooper, Ostrin & DeVarco, New York City, H. Howard Ostrin, New York City, of counsel, for respondent.

EDELSTEIN, District Judge.

This matter came on to be heard upon the verified petition of Ivan C. McLeod, Regional Director of the Second Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10 (*l*) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(*l*) (herein called the Act), pending the final disposition of the Board on the matter, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in the petition. Respondent filed an answer. A hearing on the issues raised by the petition and answer was duly held on December 24, 1957. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue and submit briefs on the evidence and the law. The court has fully considered the petition, answer, evidence, and arguments and briefs of counsel, and has made its findings of facts and conclusions of law upon the entire record.

Findings of Fact.

1. Petitioner is Regional Director of the Second Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. Respondent, National Maritime Union of America, AFL-CIO, an unincorporated association, is a labor organization within the meaning of sections 2(5), 8(b) and 10(*l*) of the Act, and at all times material has maintained its principal office in the Borough of Manhattan, State of New York, and has been engaged within this judicial district in promoting and protecting the interests of its employee members and in transacting business.

3. On or about December 18, 1957, Moore-McCormack Lines, Inc. (herein called Moore-McCormack), pursuant to the provisions of the Act, filed a charge with the Board alleging that respondent has engaged in and is engaging in unfair labor practices within the meaning of section 8(b), subsection (4) (C) of the Act.

4. The charge was referred to petitioner as Regional Director of the Second Region of the Board for investigation, and was investigated by petitioner and under his supervision.

5. There is and petitioner has reasonable cause to believe that:

(a) Moore-McCormack is, and at all times material has been a corporation organized under the laws of the State of Delaware engaged in the transportation of cargo and passengers in interstate and foreign commerce.

(b) Pursuant to eight separate petitions filed by Seafarers International Union of North America, Atlantic and Gulf District, AFL-CIO (herein called Seafarers), a labor organization within the meaning of sections 2(5) and 8(b) (4)

(C) of the Act, the Board, on or about November 8, 1957, directed that eight separate elections by secret ballot among the following groups of employees be held:

All unlicensed personnel, excluding pursers, radio operators, and supervisors as defined in the Act, employed on each of the following 8 vessels: (a) the S.S. Robin Sherwood; (b) the S.S. Robin Trent; (c) the S.S. Robin Hood; (d) the S.S. Robin Locksley; (e) the S.S. Robin Goodfellow; (f) the S.S. Robin Gray; (g) the S.S. Robin Kirk; (h) the S.S. Robin Mowbray;

to determine whether the employees in each group wished to be represented for the purposes of collective bargaining by Seafarers, or by respondent.

(c) On or about December 6, 1957, after elections conducted in accordance with the Board's direction as set forth in Finding of Fact 5(b), the Board pursuant to section 9 of the Act, certified Seafarers as the exclusive collective bargaining representative of the employees in the units as determined by the Board, on each of the following vessels: (a) the S.S. Robin Kirk; (b) the S.S. Robin Gray; (c) the S.S. Robin Locksley; and (d) the S.S. Robin Sherwood.

(d) Since (on or about) December 6, 1957, respondent has demanded that Moore-McCormack recognize and bargain with respondent as the representative of the employees aboard the S.S. Robin Kirk, the S.S. Robin Gray, the S.S. Robin Locksley, and the S.S. Robin Sherwood, in the units for which Seafarers has been certified as the exclusive collective bargaining representative as set forth in Finding of Fact 5(c).

(e) In furtherance and support of its demand set forth in Finding of Fact 5 (d), and notwithstanding the certifications to Seafarers as set forth in Finding of Fact 5(c), since (on or about) December 17, 1957, respondent has pick-eted piers in the Ports of New York, Philadelphia, Baltimore and Norfolk where a Moore-McCormack ship was berthed, with picket signs carrying various legends typical of which is the following:

Dont Pass Our Picket Line
NMU, AFL-CIO

(f) By the picketing referred to in Finding of Fact 5(e) and by other means, including orders, directions, instructions, requests, and appeals, respondent has engaged in, and has induced and encouraged the employees of Moore-McCormack, and of other employers, to engage in, strikes or concerted refusals in the course of their employment to use, transport, or otherwise handle or work on goods, articles, materials or commodities, or to perform services.

(g) An object of respondent's acts and conduct referred to in Findings of Fact 5(e) and (f) is to force or require Moore-McCormack to recognize and bargain with respondent as the representative of Moore-McCormack's employees who are within the units set forth in Finding of Fact 5(b) notwithstanding that Seafarers has been certified by the Board as the exclusive bargaining representative of the employees in those units.

(h) The acts and conduct set forth in Findings of Fact 5(e), (f) and (g), occurring in connection with the operations of Moore-McCormack, have a close, intimate and substantial relation to trade, traffic and commerce and the free flow of commerce.

6. It may be fairly expected that, unless restrained, respondent will repeat or continue the acts and conduct set forth in Findings of Fact 5(e), (f) and (g), or similar or like acts and conduct.

Discussion.

■■ The crucial issue in the case is one of fact: the purpose of the respondent union's picketing activities.[1] Hav-

1. The president of the respondent union denied from the witness stand that the picketing activities in issue were authorized and directed by the union. But in its answer to the petition the respondent alleged that it did, on or about the date in question, picket the piers referred to in the petition, although the

ing been certified by the National Labor Relations Board in 1938 as the collective bargaining representative for the broad unit of specified unlicensed personnel employed by the company (a predecessor of Moore-McCormack Lines, Inc.) on vessels operated out of Atlantic and Gulf ports, the respondent National Maritime Union subsequently entered into collective labor agreements with the company on that basis. But in 1957 Moore-Mc-Cormack purchased from the Seas Shipping Company eight of the vessels the latter had operated under the title "Robin Line". The newly acquired vessels are in the Atlantic and Gulf service. Inasmuch as the Seafarers International Union had represented the unlicensed personnel on these vessels prior to the sale, it sought to continue such representation and upon its petition the Board ordered an election to be held on each of the eight ships. In its Decision and Direction of Elections the Board set forth that the unlicensed personnel on board each vessel could appropriately constitute a separate unit, or they could be appropriately represented together with the unlicensed personnel then represented by the National Maritime Union. After elections on four of the ships the Seafarers International Union was certified by the Board as the collective bargaining representative for the unit of the specified unlicensed personnel on each ship. Shortly after these certifications, the picketing activities in issue commenced.

The petitioner contends that these activities were for the purpose of forcing Moore-McCormack to recognize and bargain with the National Maritime Union as the representative of the employees aboard the four Robin vessels, in the face of the Board's certification of the Seafarers, in violation of section 8(b), subsection (4) (C) of the Act, 29 U.S.C. § 151 et seq., 29 U.S.C.A. § 151 et seq.[2]

But the respondent insists that its picketing was only for the purpose of enforcing its unexpired collective bargaining agreement with Moore-McCormack, an object not proscribed by the Act.

Obviously, the basic quarrel is one over the designation of the appropriate collective bargaining unit. The National Maritime Union, in seeking to enforce its contract on behalf of all unlicensed personnel employed by the company on vessels operating out of Atlantic and Gulf ports, is insisting that the personnel on the newly acquired Robin vessels are included within the unit for which it is the collective bargaining representative. Seen in this light, the dispute over the crucial issue of fact becomes one of semantics. There is certainly reasonable cause to believe that the picketing had for its objective the forcing of the National Maritime Union into the position of bargaining representative for the employees on the Robin vessels, despite the Board certifications of the Seafarers as the representative for those units. To speak of it as being for the purpose of enforcing the National Maritime Union contract is to ascribe to it a different meaning only if the certifications are of no legal effect. But in the posture of

reason assigned was the refusal of Moore-McCormack to comply with the collective bargaining contract. Moreover, the testimony of other witnesses clearly gives rise to the inference that the union itself did in fact conduct the picketing.

2. "8 (b) It shall be an unfair labor practice for a labor organization or its agents—
* * * * *
"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a con-

certed refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: * * (C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 9; * * *"

this case, those certifications cannot be,[3] and indeed have not been called into issue.[4]

### Conclusions of Law.

1. This Court has jurisdiction of the parties and the subject matter of this proceeding, and under section 10(*l*) of the Act, has jurisdiction to grant injunctive relief.

2. Respondent is a labor organization within the meaning of sections 2(5), 8(b) and 10(*l*) of the Act.

3. There is reasonable cause to believe that:

(a) Moore-McCormack is engaged in commerce within the meaning of section 2, subsections (6) and (7) of the Act.[5]

(b) Respondent has engaged in and is engaging in unfair labor practices within the meaning of section 8(b), subsection 4(C) of the Act, and affecting commerce within the meaning of section 2, subsections (6) and (7) of the Act, and that a continuation of these practices will impair the policies of the Act as set forth in section 1(b).

4. To preserve the issues for the determination of the Board as provided in the Act, it is appropriate, just and proper that, pending the final adjudication by the Board of the matters involved herein, respondent, its officers, agents, servants, employees, attorneys, and all members or persons acting in concert or participation with it or them, be enjoined and restrained from the commission and continuation of the acts and conduct set forth in Findings of Fact 5(e), 5(f) and 5(g), acts or conduct in furtherance or support thereof, and like or related acts or conduct, the commission of which in the future is likely or may be fairly expected from respondent's acts and conduct in the past.

3. "The Act does not provide for a direct judicial review of a determination of the Board fixing the appropriate unit for bargaining. Such judicial review can be had only after the Board has made a final order determining whether an unfair labor practice exists. An application for such judicial review must be addressed to the Court of Appeals, not the District Court, pursuant to Section 10(e) and (f) of the Act. See Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 154, 61 S.Ct. 908, 85 L. Ed. 1251; American Federation of Labor v. N. L. R. B., 308 U.S. 401, 408–411, 60 S.Ct. 300, 84 L.Ed. 347. [footnote omitted]

"Thus the sole original jurisdiction to review orders or certifications of the Board lies in the Court of Appeals. This Court cannot usurp that jurisdiction. It is bound by a valid and subsisting certification by the Board of an appropriate bargaining unit in the absence of a change in such ruling by the Board itself or of reversal of the Board's certification by the Court of Appeals. N. L. R. B. v. Prudential Insurance Co., 6 Cir., 154 F.2d 385, 390." Douds v. International Longshoremen's Ass'n, D.C., 147 F.Supp. 103, 110, affirmed, 2 Cir., 241 F.2d 278.

But if a constitutional question is raised by the assertion of a constitutional right not transparently frivolous, the District Court has jurisdiction to dispose of the issue of certification even though it would not have been independently justiciable. Fay v. Douds, 2 Cir., 172 F.2d 720; see also Fitzgerald v. Douds, 2 Cir., 167 F.2d 714. But see Leedom v. Kyne, D.C.Cir., 249 F.2d 490.

4. On December 20, 1957, the respondent National Maritime Union filed a complaint in this court seeking to enjoin the petitioner herein from giving effect to the certifications and from issuing any further certifications, grounded upon allegations that the Board's Decision and Direction of Elections were improper, unlawful, in violation of due process and a deprivation of the union's rights in violation of the Fifth Amendment.

5. Conceded by the respondent.