Bennet F. SCHAUFFLER, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 1357, RETAIL CLERKS INTERNATIONAL ASSOCIATION, AFL-CIO, Respondent.

Civ. No. 29730.

United States District Court
E. D. Pennsylvania.

June 26, 1961.

Marvin Roth, Washington, D. C., for N. L. R. B.

John E. Walsh, Jr., Howard S. Simonoff, Philadelphia, Pa., David Seliger, Camden, N. J., for Local 1357.

VAN DUSEN, District Judge.

The background of this suit is the acquisition by Food Fair Stores Inc. (a large chain of supermarkets) of all the stock of Best Markets, Inc. (operators of about 21 [1] stores in 1958) which became final in August 1960 as the result of the settlement in that month of litigation concerning such acquisition which commenced in 1958 or early 1959. Respondent had represented the employees of Food Fair Stores, Inc., other than those in the meat, seafood and delicatessen departments, for many years and Local 196 had represented the comparable employees of Best Markets, Inc. for many years. In 1959, respondent sought to have Best Markets, Inc. treat the employees covered by its collective bargaining contract with Local 196 (P-3 and its predecessor) as governed by the collective bargaining contract between Food Fair Stores, Inc. and respondent (P-2 and its predecessor). In spite of demands for arbitration of this issue (see R-1), respondent did not press the matter until some months after the August 1960 settlement, except that as certain stores formerly operated as Best Markets, Inc.'s stores were converted [2] into Food Fair Stores (see footnote 1), such employees were treated as covered under respondent's contract (P-2) and became members of respondent. Respondent's willingness to concentrate its activity on representation of the personnel of the converted stores and the closed stores is shown by the summary of decisions reached at the September 29, 1960, meeting of respondent and Food Fair representatives (P-7) which concerns such personnel (see pars. I and IV).

The employees of the nine stores still operated by Best Markets, Inc. (see par. 4(c) of Findings of Fact above)[3] are handled for personnel purposes by one personnel official in the Food Fair, Inc.'s administrative office and, as a general rule, there is no inter-changeability of this personnel belonging to Local 196 with the personnel in the stores operated as Food Fair Stores, including the above-described converted stores.

In December 1960, respondent again requested that the applicability of its "currently effective collective bargaining agreement" (P-2) "in all of the former Best Markets" be submitted to arbitra-

---

1. Six of these stores have been closed and six of them converted into Food Fair Stores in addition to the nine still operated as Best Stores. See paragraph 4 (c) of Findings of Fact above.

2. This conversion process included remodeling of the interior of the stores, changes in shelving repainting and erection of Food Fair signs on the stores, all of which involved "considerable expenditures." Personnel in such stores were freely transferable to other Food Fair Stores.

3. These stores are located as follows:
Broad Street & Cheltenham Avenue, Cheltenham Township, Montgomery County. Pa.
41st and Lancaster Avenue, Philadelphia
Front and York Streets, Philadelphia
100 E. Girard Avenue, Philadelphia
22nd Street and Cambria Street, Philadelphia
16th and Columbia Streets, Philadelphia
Hunting Park Avenue and Marshall Street, Philadelphia
6138 Ridge Avenue, Philadelphia
23rd and South Streets, Philadelphia
They are listed at page 443 of the "Philadelphia Yellow Pages 1961" of the Bell Telephone Company of Pennsylvania's Directory as part of an advertisement of "Food Fair Stores" but under a separate heading "Best Markets."

tion under Article X of that agreement (R–2), but this request was not pressed because respondent apparently believed Food Fair Stores, Inc. would voluntarily agree to the demand for coverage of these employees by respondent's contract. In late April or early May 1961, respondent threatened to strike if the dues of the employees, other than those in the meat department, in the nine stores listed in footnote 3 were not the subject of the checkoff system described in Article IV, Section 4, of P–2 (see testimony of Mr. McDavid). Because no such checkoff in respondent's behalf was initiated, picketing at eight of the above-mentioned nine stores has been carried on by respondent since May 5, 1961, in order to require that respondent's contract (P–2) shall govern the employees, other than those in the meat, seafood and delicatessen departments, at all of these nine stores (C–1).

■ The signs carried by the pickets read as follows (see P–1):

"BEST MARKETS
FOOD FAIR

---

UNFAIR TO
RETAIL CLERKS
UNION

---

LOCAL NO. 1357
AFL–CIO"

It is clear that at least one object of this picketing is to require that respondent be dealt with as the representative for labor problems, including grievances, of these employees (see testimony of Mr. McDavid). Under these circumstances, there has been an unfair labor practice by respondent under Section 8(b) (7) (C), 29 U.S.C.A. § 158(b) (7) (C), if this picketing "has been conducted without a petition under section 9(c), 29 U.S.C.A. §

159(c), being filed within" thirty days from May 5, 1961.[4] See McLeod v. National Maritime Union of America, AFL–CIO, 157 F.Supp. 691, 694 (S.D.N.Y. 1957); Local Joint Executive Board of Hotel and Restaurant Employees, etc., 47 L.R.R.M. 1321, at 1322 (1961). In the McLeod case, supra, the court said at page 694 of 157 F.Supp:

"The National Maritime Union, in seeking to enforce its contract on behalf of all unlicensed personnel employed by the company on vessels operating out of Atlantic and Gulf ports, is insisting that the personnel on the newly acquired Robin vessels are included within the unit for which it is the collective bargaining representative. Seen in this light, the dispute over the crucial issue of fact becomes one of semantics. There is certainly reasonable cause to believe that the picketing had for its objective the forcing of the National Maritime Union into the position of bargaining representative for the employees on the Robin vessels, * * *."

■ It is admitted that the picketing had been conducted for more than thirty (30) days without the filing of a petition under § 9(c) of the Act, 29 U.S.C.A. § 159(c) (see paragraph 5(h) of Petition and Answer). Neither the contract marked P–2 nor the contract marked P–3 prevented the respondent from filing a petition under § 9(c) of the Act, even if both such contracts applied to the employees of these nine stores:

A. Under the doctrine of Pacific Coast Assn. of Pulp & Paper Mfgrs., etc., 121 N.L.R.B. 990, 992–3 (1958), the petition could have been filed from June 1 to 3, 1961, inclusive.[5]

---

4. Any technical violation of § 3(a), 29 U.S.C.A. § 158(a), due to a defective union security provision in the contract between Local 196 and Best Markets, Inc. (cf. Keystone Coat, Apron & Towel Supply Company, et al., 121 N.L.R.B. 880, 884 (1958) ), has been corrected by the June 19, 1961, amendment to P–3 (see P–3A).

5. The contract between respondent and Food Fair Stores, Inc. became effective August 3, 1959, and terminates June 2, 1962 (see p. 15 of P–2). Under the doctrine of Pacific Coast Assn. of Pulp & Paper Mfgrs., etc., supra, any contract having a fixed term of more than two years is to be treated, for the purpose of contract bar, as a contract for a fixed

B. Under the doctrine of Keystone Coat, Apron & Towel Supply Company, et al., supra, footnote 4, the terms of § 2 (a) of P–3 are not a bar to filing such a petition even though it was amended by P–3A. See Food Haven, Inc., et al., 126 N.L.R.B. 666, 668 (1960); Radio Frequency Connectors Corporation, et al., 126 N.L.R.B. 1076, 1077 (1960).[6]

The record gives petitioner reasonable cause to believe that an object of the picketing is to require the employer and the employees to accept respondent as their representative, without an election, through forcing the application of respondent's contract P–2 to these employees. Since § 8(b) (7) (C), 29 U.S. C.A. § 158(b) (7) (C), was designed to prevent such picketing pressure to secure designation of a representative of employees by a union which is not currently certified and has not established that it represents a majority of the employees (see Local 840, etc. & C. A. Blinne Construction Co., 47 L.R.R.M. 1318 (1961)), petitioner is entitled to the injunctive relief sought under § 10(l) of the Act, 29 U.S.C.A. § 160(l). See Schauffler v. Local 1291, International Longshoremen's Union, 292 F.2d 182 (3rd Cir. No. 13,-457), and cases there cited at pages 187–188. In this case, the court said at page 187:

"Nor need the Board conclusively show the validity of the propositions of law underlying its charge but is required to demonstrate merely that the propositions of law which it has applied to the charge are substantial and not frivolous."

There is nothing in this record to indicate that petitioner did not consider respondent's argument that all employees working in its stores and those of its wholly-owned subsidiary, Best Markets, Inc., except employees in the meat, seafood and delicatessen departments, were in one appropriate unit and that the employees of these established Best Markets became subject to respondent's contract P–2 as of August 1960, when Best Markets, Inc. became definitely a wholly-owned subsidiary of Food Fair Stores, Inc. There is reasonable cause to support the petitioner's request for an injunction. The following comments on respondent's able brief (Document No. 7) may be helpful:

A. Less than all the subsidiaries of a grocery chain may be an appropriate unit. See B. C. Wholesale, Inc., 114 N.L.R.B. 1429 (1955), cited by respondent at p. 6 of Document No. 7, and Longs Stores, Inc., 129 N.L.R.B. 186, 47 L.R.R.M. 1221.

B. Where existing, as opposed to new, stores with a separate bargaining history are acquired as a part of a chain and employees whose tenure antedates the acquisition are involved, the Board's holdings referred to on pages 7–10 of respondent's brief (Document No. 7) might well not be followed. Respondent's attempts to distinguish the cases on page 9 of petition-

---

term of two years. A petition under § 9(c) of the Act must be filed either during the 150–60 day period before the end of the first two years of the contract term or after the expiration of the two-year period in order to be timely. The term of the contract for bar purposes is computed from the effective date of the contract: Benjamin Franklin Paint and Varnish Company, 124 N.L.R.B. 54 (1959). Treating this contract as one with a fixed two-year term, the expiration date would be August 2, 1961. The petition, therefore, could have been filed anywhere between March 6, 1961, and June 3, 1961.

The agreement between Best Markets, Inc. and Local 196 (P–3) became effective June 1, 1959. Under the Pacific Coast case, supra, this contract would not bar a petition filed after May 31, 1961. Therefore, neither P–2 nor P–3 was a bar to a petition under § 9(c) of the Act from June 1 to June 3, 1961.

6. Petitioner had reasonable cause to believe that P–3 was not a bar to filing such a petition on the record before this court. See, for example, paragraphs 5 (d) of Petition and Answer, stating that "Respondent is not currently certified as the representative of any of Best's employees" and the testimony of the continuous history of representation of the employees involved here by Local 196, in addition to footnote 5 above.

er's brief (Document No. 6) are not convincing.

C. The interesting legal questions raised by respondent should be disposed of by the Board, rather than by the court, in view of this language from pages 10–11 of the recent opinion in Schauffler Regional Director, etc. v. Local 1291, etc., supra:

"If, in a Section 10(*l*) proceeding, a district court or a court of appeals undertook to finally adjudicate such questions it would not be acting consistently with the congressional policy underlying Section 10(*l*). That Section's usefulness as a tool with which the status quo may be preserved pending final adjudication would be diminished insofar as the Board would be required to finally litigate questions of substance at a preliminary stage. Moreover, the court would not have the benefit of the Board's opinion on questions of fact and novel questions of labor law when making its decision. Thus, the court would, to some extent, usurp the Board's function as the primary fact finder in cases arising under the Act and its function as primary interpreter of the statutory scheme. We are of the opinion, therefore, that the issue of the effect of the contract as interpreted by the grievance committee was properly left to the Board by the court below * * *."

Respondent's Requests for Findings of Fact and Conclusions of Law (Document No. 8) are denied, except to the extent that they are consistent with this document (for example, paragraphs 2–4 of the Requests for Findings of Fact).

· For the record, it is noted that all the evidence offered by the respondent has been considered by the hearing judge, even though much of it has slight, if any, relevancy and, further, that counsel for respondent did not submit any additional authorities (as a supplement to Document No. 7) on Monday morning, June 26, 1961, in accordance with permission requested and granted at the time of the hearing on June 20, 1961. The letter of counsel for petitioner dated June 21, 1961, has been attached to the last page of its memorandum filed June 20, 1961 (Document No. 6).

### Findings of Fact and Conclusions of Law

This cause came on to be heard upon the verified petition of Bennet F. Schauffler, Regional Director of the Fourth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (herein called the Act), 29 U.S.C.A. § 160(*l*), pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondent filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held on June 20, 1961. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following:

### Findings of Fact

1. Petitioner is Regional Director of the Fourth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about May 17, 1961, Best Markets, Inc., and Food Fair Stores, Inc. (herein collectively called Best), and Amalgamated Food Employees Union, Local 196, Amalgamated Meat Cutters and Butcher Workers of North America, AFL-CIO, (hereinafter called Local 196) pursuant to provisions of the Act, filed separate charges with the Board alleging, *inter alia*, that Local 1357, Retail Clerks International Association (herein called respondent), a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of

Section 8(b) (7), subparagraph (C) of the Act, 29 U.S.C.A. § 158(b) (7) (C).

3. The aforesaid charges were referred to petitioner as Regional Director of the Fourth Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondent maintains its principal office at Philadelphia, Pennsylvania, and at all times material herein has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

(c) Best Markets, Inc., a wholly owned subsidiary of Food Fair Stores, Inc., is engaged in operating a chain of nine retail food stores in the Philadelphia, Pennsylvania area. In the operation of its business, Best Markets, Inc. annually does a gross volume of business of in excess of $500,000, and annually receives goods and materials from outside the Commonwealth of Pennsylvania valued at in excess of $50,000. (See Par. 5(c) of Petition and answer and testimony of A. L. Adams).

(d) Respondent is not currently certified as the representative of any of Best's employees.

(e) On or about June 16, 1961, and subsequent to the filing of the petition in the instant case, respondent filed a charge with the Board alleging, inter alia, that "Food Fair Stores, Inc. d/b/a Best Markets, Inc." had engaged in unfair labor practices within the meaning of Section 8(a) (2) of the Act. On or about June 19, 1961, and prior to the hearing in the instant case, the said charge was dismissed by petitioner, acting on behalf of the Board. Accordingly, no charge against Best Markets, Inc. under Section 8(a) (2) of the Act was pending before the Board at the time of hearing in the instant case. (See Exhibits P4–P6).

(f) Notwithstanding the aforesaid, respondent, since prior to May 5, 1961, has demanded that Best recognize and bargain with respondent as the representative of Best's sales employees, other than those in the meat, seafood and delicatessen departments, at the stores referred to in Finding of Fact 4(c) above, or has been attempting to compel Best's said employees to accept or select respondent as their collective bargaining representative.

(g) In furtherance of the aforesaid demand for recognition and bargaining or attempt to compel Best's aforesaid employees to accept or select respondent as their collective bargaining representative, respondent, since on or about and after May 5, 1961, has picketed eight of Best's stores referred to in Finding of Fact 4(c) above.

(h) The aforesaid picketing has been conducted for more than thirty (30) days without the filing of a petition under Section 9(c) of the Act, 29 U.S.C.A. § 159 (c), for a Board election.

(i) An object of respondent's picketing set forth in Findings of Fact 4(g) and (h) above, is to force or require Best to recognize or bargain with respondent as the representative of Best's sales employees, other than in the meat, seafood and delicatessen departments, at the stores of Best Markets, Inc., in the Philadelphia area, or to force or require Best's aforesaid employees to accept or select respondent as their collective bargaining representative, notwithstanding that respondent is not currently certified as the representative of such employees.

(j) The acts and conduct of respondent set forth in Findings of Fact 4(g), (h), and (i) above, occurring in connection with the operations of Best, have a close, intimate, and substantial relation to trade, traffic, and commerce among the several States and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

(k) Facts stated in the attached discussion.

5. It may fairly be anticipated that, unless enjoined, respondent will continue and repeat the acts and conduct set forth in Findings of Fact 4(g), (h), (i) and (j) above, or similar or like acts and conduct.

Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(l) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Sections 2(5), 8 (b) and 10(l) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160(l).

(b) Best is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(c) Respondent has engaged in unfair labor practices within the meaning of Section 8(b) (7), subparagraph (C), of the Act, affecting commerce within the meaning of Sections 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b), 29 U.S.C.A. § 141 (b), thereof. See discussion above.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained from the commission, continuation, or repetition, of the acts and conduct set forth in Findings of Fact 4(g), (h), (i) and (j) above, acts or conduct including picketing, in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.