272 F.2d 85
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS, LOCAL UNION NO. 182, and
its Agent, William A. Belden, Business
Representative, Respondents.
 No. 14, Docket 25475.
 United States Court of Appeals Second Circuit.
 Argued Oct. 13, 1959.
Decided Nov. 27, 1959.
 
 Duane B. Beeson, Atty., N.L.R.B., Washington, D.C. (Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Arthur C. Katims, Atty., N.L.R.B., Washington, D.C., on the btief), for petitioner.
 George Schiro, Utica, N.Y., for respondents.
 
 
 1
 Before CLARK, Chief Judge, MOORE, Circuit Judge, and SMITH, District judge.
 
 
 2
 J. Joseph SMITH, District Judge.
 
 
 3
 This case is before the Court upon the petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act as amended (61 Stat. 136, 65 Stat. 601, 72 Stat. 945, 29 U.S.C.A. 151 et seq.), herein called the Act, for the enforcement of its order issued on August 7, 1958, following the usual proceedings under Section 10(c) of the Act, against the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 182, hereafter called the Union, and its business representative, William A. Belden. The Board's decision and order are reported at 121 N.L.R.B. No. 39. This Court has jurisdiction, the unfair labor practices having occurred in the vicinity of Utica, New York within this judicial circuit.
 
 
 4
 The order of the Board required respondents to cease and desist from
 
 
 5
 (a) Restraining and coercing the employees of The Alling & Cory Company, Utica, New York, in the exercise of the rights guaranteed in Section 7 of the Act;
 
 
 6
 (b) Engaging in or inducing or encouraging the employees of General Electrict Company, Utica Drop Forge & Tool Company, Nugent's Confectioners, Vick's Bros. Printers, John V. Parsons Trucking Co., Western Express Company, Revere Copper & Brass Company, or any other employer, to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (1) forcing or requiring any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of The Alling & Cory Company, or to cease doing business with that company; (2) forcing or requiring The Alling & Cory Company to recognize or bargain with a labor organization as the representative of its employees unless such labor organization has been certified as the representative of such employees under the provisions of Section 9 of the Act; and to post and publish appropriate notices.
 
 
 7
 The Union attempted in the Spring of 1957 to organize the four warehouse employees and one truck driver of the Utica, New York plant of The Alling & Cory Company. The Company refused to recognize the Union, a strike was called and picketing commenced. The Company petitioned for a representation election, which was held, the Union losing by a 3-1 vote, one ballot having been challenged. On September 17, 1957 the Board's regional director certified that the Union was not the representative of the Company's employees in the bargaining unit. Picketing continued and was expanded to include picketing of customers' premises while the Company truck was making deliveries there. Employees of customers observed the picketing and were induced thereby to refrain from handling Alling & Cory's goods. Other delivery trucks were stopped and requested not to enter the customers' premises while the Company truck unloaded. The traffic manager of one customer was told by respondent's business representative that the picket line would be removed if the Company's delivery was refused, which thereupon occurred.
 
 
 8
 There are two principal questions posed by the Board's petition: whether the picketing at customers' premises is secondary boycott activity of a kind proscribed by either 8(b)(4)(A) or 8(b)(4)(B) of the Act, and whether the picketing at the employer's warehouse plus the activities at the customers' premises amount to coercion or restraint of employees within the meaning of 8(b)(1)(A) of the Act, the Union having failed of recognition as a result of defeat in a representation election.
 
 
 9
 Section 8(b)(4)(A) and Section 8(b)(4)(B) provide that it shall be an unfair labor practice for a union or its agents 'to engage in, or to induce or encourage the employees of any employer to engage in, a strike or concerted refusal in the course of their employment to * * * transport, or otherwise handle or work on any goods * * * or to perform any services, where the object thereof is:
 
 
 10
 '(A) forcing or requiring * * * any employer or other person * * * to cease doing business with any other person;
 
 
 11
 '(B) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9.'
 
 
 12
 Section 8(b)(1)(A) makes it an unfair labor practice for a labor organization 'to restrain or coerce * * * employees in the exercise of the rights guaranteed in section 7.' Section 7 guarantees to employees 'the right to self-organization, to form, join, or assist labor organizations, to bargain through representatives of their own choosing, * * * and * * * the right to refrain from any or all of such activities * * *'
 
 
 13
 The Act of September 14, 1959, Public Law 86-257, effective November 13, 1959 added a new unfair labor practice by adding a paragraph to 8(b) in part as follows:
 
 
 14
 '(7) to picket or cause to be picketed, * * * any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees * * *, unless such labor organization is currently certified as the representative of such employees: * * *
 
 
 15
 '(B) where within the preceding twelve months a valid election under section 9(c) of this Act has been conducted * * *'
 
 
 16
 Section 707 of the Act of September 14, 1959, 29 U.S.C.A. 153 note, provides in part that 'no provision of this title shall be deemed to make an unfair labor practice, any act which is performed prior to such effective date which did not constitute an unfair labor practice prior thereto.'
 
 The Activity at the Customers' Premises
 
 17
 There is no serious dispute as to the facts concerning the peaceful picketing at the premises of customers of the primary employer. There is substantial evidence on the record considered as a whole to support the Board's finding that the Union encouraged the employees of neutral customers to engage in a concerted refusal to handle the Company's products and to encourage the customers to cease doing business with the Company. We are bound to accept that finding. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; National Labor Relations Board v. Pittsburgh Steamship Co., 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479. There was therefore a violation of 8(b)(4)(A). N.L.R.B. v. United Steelworkers of America, 1 Cir., 250 F.2d 184. This section was enacted as a practical compromise between 'the dual congressional objectives of preserving the right of labor organizations to bring pressure to bear on offending employers in primary labor disputes and of shielding unoffending employers and others from pressures in controversies not their own.' N.L.R.B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 692, 71 S.Ct. 943, 953, 95 L.Ed. 1284. There was also substantial evidence, in the testimony as to the demands by the Union representative, to support the finding that the object of the activity at the premises of the neutrals was by inducing the neutrals' employees to engage in concerted refusal to handle the Company's goods to force the Company to recognize the Union as the representative of its employees. This established a violation of 8(b)(4)(B). N.L.R.B. v. Intern. Brotherhood of Teamsters, etc., Local 182, 2 Cir., 219 F.2d 394. The Union's principal attack on the finding of violations of 8(b)(4)(A) and (B) is based on the rule of the Moore Dry Dock case, 92 N.L.R.B. 547, applied in this circuit where the business of the primary employer has a roving situs in N.L.R.B. v. Service Trade Chauffeurs, 2 Cir., 191 F.2d 65; 199 F.2d 709. The Moore Dry Dock rule, however, is not applicable to every situation where some of the Company's employees are found outside the primary situs. See N.L.R.B. v. Associated Musicians, 2 Cir., 226 F.2d 900. In Moore Dry Dock the only place in which the dispute could effectively be publicized was that at which the work was being done, which belonged to another than the primary employer, and there no attempt was made to interfere with other work in progress at the yard. In the case at bar all the employees could be reached every day at the warehouse and continuous picketing there was feasible and was in fact carried on. So in the case at bar there would be no justification for a holding that the primary situs followed the truck on its delivery rounds. The finding of the Board that the customers' premises were not the primary situs of the dispute must be sustained. It follows that the picketing at those premises for the purposes proscribed by 8(b)(4)(A) and 8(b)(4)(B) of the Act was a proper subject for a Board order to cease and desist. The Board is entitled to enforcement of that portion of its order.
 
 The Finding of Violation of 8(b)(1)(A)
 
 18
 The Board found also that the peaceful picketing by the Union minority for recognitional purposes amounted to restraint and coercion of the employees in the exercise of the rights guaranteed in Section 7 (the right to join labor organizations or refrain therefrom). This is a troubled question. The Board for some years after the passage of the Act took the view that peaceful picketing for such purposes was not restraint or coercion within the meaning of 8(b)(1)(A). Perry Norvell, 80 N.L.R.B. 225. In a number of recent cases, however, it has swung over to the opposite conclusion. The courts have been divided in enforcement actions since the Board adopted its present view. The Court of Appeals for the District of Columbia recently rejected this view. Drivers, etc., Local 639 v. N.L.R.B., D.C.C.ir., 1958, F.2d (Miller, J., dissenting), certiorari granted 1959, 359 U.S. 965, 79 S.Ct. 876, 3 L.Ed.2d 833. The Court of Appeals for the Fourth Circuit, however, has adopted it. N.L.R.B. v. United Rubber, etc., Workers, 4 Cir., 269 F.2d 694 (Sobeloff, J., dissenting). The legislative history is inconclusive, expressions by Senator Taft and others during the consideration of the legislation being cited by both sides of the controversy. Legislative History of the Labor Management Relations Act, Govt. Print. Off., 1948. Some of the confusion undoubtedly arises from the fact that the discussions centered largely around mass and other violent forms of picketing. II Leg.Hist. 1205-1206. In 1948 The Watchdog Committee interpreted the Act as limiting recognitional strikes in Section 8(b)(4)(C), but not otherwise. Senate Rep. 986, pt. 3, 80th Cong., 2nd Sess., pages 70, 71, 85, 87. All picketing has in it elements of coercion and restraint at least through the solicitation of the support of public opinion even though the primary purpose may be to publicize to the employees the merits of the controversy. Yet if the Congress had intended to prohibit all organizational and recognitional picketing it would unquestionably have done so directly rather than indirectly as 'coercion and restraint.' This is borne out by its doing so in the limited class of recognitional picketing cases covered by 8(b)(4)(C) and by its recent action, following claimed abuses of such picketing, by limiting further the situations in which it may be used. In this troubled field we should be especially hesitant to anticipate Congressional action. The Congress is equipped to inform itself fully and carefully to develop governing legislation. We should proceed cautiously when urged to outrun the legislative mandate. Rabouin v. N.L.R.B., 2 Cir., 195 F.2d 906, 912. The original administrative construction, adhered to for some nine years, is bolstered by the action taken by the present Congress, in Pub.Law 86-257, 73 Stat. 519, Sec. 704(c), which now makes it an unfair labor practice for a non-certified union to conduct peaceful picketing for recognitional purposes in certain situations under the Act, including that which existed here, where within the preceding twelve months a valid election under Section 9(c) has been conducted. It is plain from the wording of the subsection as a whole, that peaceful recognitional picketing was not considered to have been generally proscribed by 8(b)(1)(A), or the new paragraph 8(b)(7) would have been unnecessary.
 
 
 19
 The Board's order in the case at bar is broader than the prohibitions of the new Section 8(b)(7), broad enough to prohibit picketing, more than 12 months after an election, where no other union has been lawfully recognized, and where the time for a petition under 9(c) has not run. The Board has attempted to go farther than the Congress later determined to go. Since the Congress has now set the standards for the future, the precise question presented here is unlikely to recur. We do not have before us questions as to the precise scope and applicability of 8(b)(7) which will undoubtedly be decided in other cases on future records of findings as to activities after the effective date of the new Act. In the case at bar we consider the situation as it was prior to the new Act, and hold that 8(b)(1)(A) was not intended to proscribe the peaceful recognitional picketing at the plant of the primary employer in the manner found to have occurred here.
 
 
 20
 The order of the Board may be modified by striking out paragraph 1(a) thereof and by striking out the corresponding fist paragraph of the notice contained in the appendix to the order, and as so modified the order of the Board is ordered enforced.