**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 239, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFERS, WAREHOUSEMEN, AND HELPERS OF AMERICA, Respondent.**

No. 271, Docket 26600.

United States Court of Appeals
Second Circuit.

Argued Feb. 24, 1961.

Decided April 17, 1961.

**42**

James C. Paras, Atty., National Labor Relations Board, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel, Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Charles R. Katz, Katz & Wolchok, New York City, for respondent.

Before HINCKS and MOORE, Circuit Judges, and BRENNAN, District Judge.*

HINCKS, Circuit Judge.

This case involves one of the provisions of the Labor-Management Reporting and Disclosure Act of 1959. Section 704(c) of the Act, 73 Stat. 544, added a new union unfair labor practice to the National Labor Relations Act of 1935, § 8, 49 Stat. 449, as amended, Labor-Management Relations Act of 1947, 61 Stat. 141, 29 U.S.C.A. § 158. Section 8(b) (7), 29 U.S.C.A. § 158(b) (7), the clause creating the new unfair labor practice, provides, in the part here pertinent, that it shall be an unfair labor practice for a labor organization or its agents

"to picket or cause to be picketed * * * any employer where an object thereof is forcing or requiring an employer to recognize or bargain

with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

\*    \*    \*    \*    \*    \*

"(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided*, that when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c) (1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further*, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services." [1]

As found by the Trial Examiner, the facts are these. The employees of Stan-Jay Auto Parts & Accessories Corp., a corporation engaged in interstate commerce and within the N. L. R. B.'s jurisdictional limits, had never been represented by a labor organization. In Sep-

---

* Sitting by designation.

1. Subsections (A) and (B) are not involved in this case. They respectively prohibit picketing with an object of forcing or requiring recognition or organization (A) when the employer has lawfully recognized another labor organization and when a question concerning representation may not appropriately be raised under § 9(c), and (B) when a valid § 9(c) election has been held within the preceding 12 months.

tember 1959 the respondent [hereinafter "the union"] began to picket Stan-Jay. There is no doubt that the union's purpose at that time was to obtain recognition or organization. This picketing was "orderly and peaceful." The picket signs read, in pertinent part, "Local 239 * * * wants the employees of Stan-Jay [sometimes supplemented with the words "is stingy"] * * * to join them to gain union wages, job security and working conditions."

On November 13, 1959, section 8(b) (7) became effective. On November 23, Stan-Jay filed an unfair labor practice charge, which was mailed by the regional office of the Labor Board to the union on November 25, and received by it on Thanksgiving Day, November 26. On November 25, the Regional Director telegraphed the union requesting it to inform him whether it intended to file a representation petition and notifying it that unless a petition was filed by close of business Friday, November 27, a complaint would be issued and an injunction sought under § 10(l). No petition having been filed by the union, on November 30 the unfair labor practice complaint was issued. On December 2, the Regional Director applied for a 10(l) injunction which was issued on January 21, 1960. McLeod v. Local 239, Intern. Brotherhood of Teamsters, D.C.E.D.N.Y., 179 F.Supp. 481; D.C., 182 F.Supp. 949.

Sometime after November 24, the union changed its picket signs from the clearly recognition-organizational ones quoted above to signs following the language of the second proviso to § 8(b) (7) (C). The new signs read: "To the public. Please be advised Stan-Jay * * * does not employ members of, nor has a contract with any labor union including Local 239, I. B. of T."

On June 1, 1960, the Labor Board issued its Decision and Order, 127 N.L.R.B. No. 132, finding that the union had committed an unfair labor practice and ordering it to cease and desist from picketing Stan-Jay "under conditions prohibited by 8(b) (7)." We have jurisdiction over this petition for enforcement, the alleged unfair labor practices having occurred in Long Beach, New York, within this circuit. Section 10(e), 29 U.S.C.A. § 160(e).

The union makes essentially three arguments designed to show that its activity was outside the ambit of § 8(b) (7) (C). It argues (1) that its activity was not covered by the preamble of § 8(b) (7) because, it claims, (a) recognition or organization was not an "object" of its post-November 13 picketing, and (b) even if an "object" of the picketing was recognition or organization, the picketing did not have an object of "forcing or requiring" recognition or organization; (2) that its activity was not covered by § 8(b) (7) (C) because it was not afforded a "reasonable time" to picket without petitioning for election under § 9(c); and (3) that its activity was exempted from § 8(b) (7) (C) by the second proviso thereto inasmuch as (a) it had the purpose of truthfully advising the public that Stan-Jay does not employ members of, or have a contract with, a labor organization, and (b) it did not have the effect of inducing any person not to pick up or deliver.

The union's argument that recognition or organization was not "an object" of its post-November 13 picketing is disposed of easily. The Examiner and the Board, in concluding that such "an object" existed after the effective date of § 8(b) (7), took into consideration the clearly recognition-organizational object of the union before November 13. This, urges the union, presumes the existence of an illegal act. But a sign with a clearly recognition-organizational purpose continued to be used for at least eleven days after § 8(b) (7) took effect, indicating that the union's object, like its sign, had not changed, and on November 20, the union's business agent proposed a "deal" whereby the picketing would cease (and would begin at one of Stan-Jay's nonunion competitors) in consideration of two of Stan-Jay's three employees joining the union and in further

consideration of a contract with a union-shop clause. It follows that the proscribed, recognition-organization, object (which, in any event, would not have been "illegal" had the union filed a representation petition within a reasonable time) was not presumed to have continued from before November 13, but was independently proved. Thus our decision in N. L. R. B. v. Local 50, Bakery and Confectionery Workers, 2 Cir., 245 F.2d 542, is inapplicable. The pre-November 13 evidence was, at most, circumstantial evidence which corroborated the post-November 13 evidence, or was used as a background against which to interpret the post-November 13 facts.

■ The union's argument that its object was not to "force or require" recognition or organization is premised on the notion that the statutory language contemplates physical violence or threats thereof. But the setting of the language makes it clear that "forcing or requiring" refers to the intended effect of the picketing, not the manner in which the picketing is carried on, to the "object," not the method, and it is clear that the union's object was swiftly to compel organization or recognition, not merely to create a climate in the shop favorable to the union. The phrase "forcing or requiring" was used in § 8(b) (4) before the passage of the 1959 amendments, see 29 U.S.C.A. § 158(b) (4) (A), (B), (C), (D), and the case law thereunder does not require violence. See, e. g., N. L. R. B. v. Enterprise Ass'n of Steam, etc., Pipefitters of New York and Vicinity, Local Union No. 638, 2 Cir., 285 F.2d 642, 645, where we found an entirely peaceful refusal to install pipe to have as its object "forcing or requiring any employer to cease using, * * * or otherwise dealing in the products of any other producer or to cease doing business with any other person" in violation of § 8(b) (4) (A). And see the discussion of the instant problem in Comment, 69 Yale L. J. 1393, 1398. The fact that picketing, which involves the use of speech, is the subject-matter of § 8(b) (7) does not change the meaning of "forcing or re-

quiring." And the union's argument is no more persuasive when cast in constitutional language. Cf. Greene v. International Typographical Union, D.C.D.Conn., 182 F.Supp. 788, 792–793. It is true, of course, that N. L. R. B. v. Drivers, Chauffeurs, Helpers, Local Union No. 639, 362 U.S. 274, 80 S.Ct. 706, 712, 4 L.Ed.2d 710, the Curtis Bros. case, held that peaceful recognition picketing does not amount to "restraint or coercion" of rights guaranteed by § 7, 29 U.S.C.A. § 157, which made it an unfair labor practice under § 8(b) (1) (A), and that the Supreme Court referred to "the sensitive area of peaceful picketing." And see N. L. R. B. v. International Brotherhood of Teamsters, etc., Local Union No. 182, 2 Cir., 272 F.2d 85. But this cannot be said to amount to a holding that peaceful picketing can constitutionally be said to have the object of "forcing or requiring" only if it involves violence. Indeed, Curtis Bros. itself, 362 U.S. at page 291, 80 S.Ct. at page 716, notes that § 8 (b) (7) "proscrib[es] peaceful organizational strikes in many situations."

■ Thus the union's activity is within the preamble to § 8(b) (7) (quoted above), and the inquiry shifts to subsection (C). Organizational or recognition picketing by an uncertified union is barred under that subsection if the union fails to file a petition for an election "within a reasonable period of time not to exceed thirty days from the commencement of such picketing." The union claims it was not given such a reasonable period of time after November 13. By its own count, however, it picketed for 13 days after the effective date of § 8(b) (7) without petitioning for an election. In the light of the pre-November 13 picketing, we cannot find erroneous the Board's determination that a reasonable period of time in which the union could campaign for support had expired by November 30. The union suggests that a "reasonable period of time not to exceed thirty days" must be read to mean "thirty days" in the absence of "unusual compelling and extenuating circumstances," lest it be in danger of being so vague as

to violate due process or constitute an unconstitutional delegation to the Board of legislative power. The statute plainly contemplates thirty days as the outer limit, with power in the Board, subject to review by the courts, to fix shorter periods as "reasonable" ones according to particular fact situations. See Comment, 69 Yale L.J. 1393, 1424; 105 Cong. Rec. 18153 (remarks of Mr. Griffin). And as so construed, the constitutionality of this clause stands unimpaired. The standard of "reasonableness," employed daily by judges and administrators in countless rules of decision, is sufficient to shield authority granted an administrative agency from constitutional attack, just as is, for example, the standard of "the public interest," see New York Central Sec. Corp. v. United States, 287 U.S. 12, 24, 53 S.Ct. 45, 77 L.Ed. 138; McManus v. C. A. B., 2 Cir., 286 F.2d 414.

█ The union contends that it was not afforded a reasonable period of time to invoke the expedited procedure of § 8 (b) (7) (C). But under that section all the union had to do was to file "a petition under section 9(c) * * * within a reasonable period of time not to exceed thirty days from the commencement of such picketing." We think the record amply supports the Board's finding that this was not done—that by November 27 the union had had reasonable opportunity to file a simple representation petition. The union makes much of the Board's practice under its Regulations, 29 C.F.R. Sections 102.73–102.82, whereby the filing of a *bona fide* charge is a prerequisite to the expedited procedure envisaged by § 8(b) (7) (C). It apparently argues that the effect of the practice here was to cut down from 13 to 2 days the time within which it could "invoke the expedited procedure." But this argument loses sight of the fact that in every § 8 (b) (7) (C) case, to validate the continuation of organizational picketing the un-ion must file "a petition under 9(c)." Whether thereupon the Board will invoke the expedited procedure is another matter. We base our decision, therefore, upon the holding that the statute does not give the union a "right" to expedited procedure when it fails to file a representation petition.[2]

█ The union attacks the Board's findings and conclusions with respect to the second proviso of § 8(b) (7) (C). This exempts from the operation of subsection (C) picketing "for the purpose of truthfully advising the public" that the picketed shop is nonunion, but excepts from the exemption picketing which has the secondary effect of halting deliveries. Various interpretations of the exemption are possible. The Board did not make a finding as to whether this picketing was within the exemption's scope, because it thought that, in any event, the picketing had the proscribed secondary effect. We agree. The union argues that the delivery-stoppage, if any, was caused by a notice sent to suppliers informing them of the picket line, not by the picket line itself. But whether such a hair-splitting distinction is meaningful we do not need to decide. For the Examiner found "the picketing" to be the cause of cessation and our study of the record reveals testimony to support that finding. The union also predicates error on the fact that the Examiner recited post-complaint evidence of delivery cessation. But this is of no moment. There was substantial pre-complaint evidence sufficient to support the Examiner's crucial findings on this point. Moreover, § 10(b) gives the Board "power to issue * * * a complaint *stating the charges*," and we think that N. L. R. B. v. Fant Milling Co., 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243, holding that the Board may utilize post-charge evidence, is equally applicable to post-complaint evidence.

Enforcement granted.

**2.** For criticism of the practice, see Aaron, The Labor Management Reporting and Disclosure Act, **73** Harv.L.Rev. 1086, 1108–09. The practice was approved in Reed v. Roumell, D.C.E.D.Mich., **185** F.Supp. 4.