Bernard **SAMOFF**, Acting Regional Director of the Fourth Region of the National Labor Relations Board, for and on Behalf of the **NATIONAL LABOR RELATIONS BOARD**, Petitioner,

v.

**HOTEL, MOTEL AND CLUB EMPLOYEES' UNION, LOCAL 568, AFL–CIO, Respondent.**

Civ. No. 30111.

United States District Court
E. D. Pennsylvania.

Aug. 28, 1961.

Marvin Roth, Washington, D. C., and David S. Reisman, Philadelphia, Pa., for plaintiff.

Edward Davis, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This cause came on to be heard upon the verified petition of Bernard Samoff, Acting Regional Director of the Fourth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10 (*l*), 29 U.S.C.A. § 160(*l*) of the National Labor Relations Act, as amended (herein called the Act), pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondent filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held begin-

ning on August 23, 1961. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following:

Findings of Fact.

1. Petitioner is Acting Regional Director of the Fourth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about July 11, 1961, Marriott Motor Hotels, Inc. (herein called Marriott), pursuant to the provisions of the Act, filed a charge with the Board alleging that Hotel, Motel and Club Employees' Union, Local 568, AFL–CIO (herein called respondent), a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (7), subparagraph (C), of the Act, 29 U.S.C.A. § (b) (7) (C).

3. The aforesaid charge was referred to petitioner as Acting Regional Director of the Fourth Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondent maintains its principal office at Philadelphia, Pennsylvania, and at all times material herein respondent has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

(c) Marriott owns and operates motels and restaurants in various locations in the United States, including a new motel and restaurant at City Line and Monument Avenue, Lower Merion Township, Montgomery County, Pennsylvania, (herein called Philadelphia Motel), which has been open for business since on or about July 14, 1961. Marriott receives more than $500,000 gross revenues annually from the operation of its motels. A majority of the residents of the motels are transient and remain less than a month. Marriott, during the past year, has received goods and materials from outside the State of Pennsylvania valued at in excess of $50,000 to be used in the operation of the aforesaid Philadelphia Motel.

(d) Respondent is not currently certified as the collective bargaining representative of any of Marriott's employees at the said Philadelphia Motel.

(e) No charge has been filed with the Board under Section 8(a) (2) of the Act alleging that Marriott has unlawfully recognized or assisted any labor organization.

(f) Notwithstanding the aforesaid, respondent, since on or about July 10, 1961, has been in the process of organizing the employees of Marriott and has asked such employees to join its union (N.T. 11, 76 and P–2).

(g) In furtherance of the aforesaid attempt to have Marriott's employees join respondent and accept or select respondent as their collective bargaining representative, respondent, since on or about July 10, 1961, has picketed or caused Marriott to be picketed at the Philadelphia Motel (P–1). The pickets have stopped or delayed Marriott's employees in their attempt to get to work (N.T. 70–75, 94–95).

(h) The aforesaid picketing has been conducted for more than thirty (30) days without the filing of a petition under Section 9(c) of the Act for a Board election.

(i) The aforesaid picketing has induced individuals employed by suppliers, service companies, common carriers, and other persons, not to make pick-ups or deliveries at Marriott's premises, or perform services at such premises (for example N. T. 33–34, 61, 68, 77, 92, 99–101, 106–107, D 1, D 2, N.T. 56–60).

(j) An object of respondent's picketing set forth in Findings of Fact 4(g), (h) and (i) above, is to force or require Marriott to recognize or bargain with respondent as the representative of Marriott's employees and to force or require Marriott's employees to accept or select respondent as their collective bargaining representative, notwithstanding that respondent is not currently certified as the representative of such employees.

(k) The acts and conduct of respondent set forth in Findings of Fact 4(g), (h), (i) and (j) above, occurring in connection with the operations of Marriott, have a close, intimate, and substantial relation to trade, traffic, and commerce among the several States and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

5. It may fairly be anticipated that, unless enjoined, respondent will continue and repeat the acts and conduct set forth in Findings of Fact 4(g), (h), (i), (j) and (k) above, or similar or like acts and conduct.

### Conclusions of Law.

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(l) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10(l) of the Act.

(b) Marriott is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(c) Respondent has engaged in unfair labor practices within the meaning of Section 8(b) (7) subparagraph (C), of the Act, affecting commerce within the meaning of Sections 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation, or repetition, of the acts and conduct set forth in Findings of Fact 4(g), (h), (i), (j) and (k) above, acts or conduct (including picketing) in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.

Done at Philadelphia, Pennsylvania, this 25th day of August, 1961. A discussion of the Facts and Law will be filed in amplification and support of the foregoing as soon as feasible.

### Discussion.

Early on the morning of July 10, 1961, when Marriott's Philadelphia Motel and Restaurants were nearing completion, being scheduled to open July 14, 1961, respondent began to picket the four entrances to the Motel. The signs carried by the pickets carried either of the two following legends (P-1):

To the Public

Marriott Motor Lodge does not have a Labor Contract with Hotel, Motel & Club Employees' Union, Local 568—AFL-CIO

Please Do Not Patronize

Hotel, Motel & Club Employee's Union Local 568—AFL-CIO

Has No Dispute with the Building Contractors or its Employees on this job

In spite of the legend described on the right, there is reasonable cause to believe that the pickets talked to drivers of companies supplying services and goods to the contractor, orally persuading such drivers not to cross the picket line (see P–3 and N.T. 66–68). On July 10, almost all of the 400 employees of the General Contractor and his subcontractors refused to cross the picket line (N.T. 39). Except for electrical workers, almost all these workers had returned to work by July 17 (N.T. 40). Some supplies for the construction workers were not delivered due to the pickets from July 10 until August 8, when the respondent agreed not to picket the western Motel entrance on Monument Road (one of four Motel entrances) which had been set aside as a service entrance for the exclusive use of the contractors' employees and deliveries [1] (N.T. 64). During the hearing, counsel for respondent objected to the admission of any evidence concerning the effect of picketing on the contractor's operations and those of his subcontractors, since the Union had stipulated on August 8, 1961, in a § 10(1), 29 U.S.C.A. § 160 (1), proceeding (brought as a result of charges filed by Marriott under § 8(b) (4) (i) (B), 29 U.S.C.A. § 158(b) (4) (i) (B)) that, pending final decision of the Board on the charge under 8(b) (4) (i) (B), it would not picket at or in the vicinity of the above-described west entrance on Monument Road which had been reserved for the use of construction contractors, subcontractors, or their suppliers (Civil Action No. 29966, Document No. 3). The hearing judge concludes that this testimony has some relevance in this action for background purposes [cf. N.L.R.B. v. Local 239, Teamsters, 2 Cir., 1961, 289 F.2d 41, 44], but has not relied on any failure of the General Contractor or subcontractors to receive supplies or services in making the findings of fact. However, the petitioner was entitled to consider the testimony (N.T. 66–68) and exhibit (P–3), indicating that pickets did speak to the truck driver on July 10, to support such testimony in the case of vehicles bringing services and employees to Marriott (footnote 3 and N. T. 70–75 & 94–95) and to negative the testimony of respondent's witnesses that pickets were instructed not to talk to anyone and never asked anyone not to cross the picket line (N.T. 117–8, 126, 132, 145, 153, 156).

As pointed out in the Findings of Fact, Marriott's employees, as well as delivery and service trucks for the operation of the Motel, have also been interfered with by the pickets (see 4(g) and (i) on page 3 of Document No. 5). The references to the notes of testimony on page 3 of Document No. 5 have been almost wholly confined to instances where supplies for the operation of the Motel or transportation of guests [2] or employees to the Motel have been interfered with by the picketing. There was also testimony that guests with reservations had refused to stay at the Motel due to the picketing (N.T. 31–32), and that taxicabs would not cross the picket line in order to pick up guests (N.T. 34). Although some of the taxicab drivers may have refused to cross a solely informational picket line, the testimony shows that at least one employee of a service company was orally persuaded not to enter the driveway by the pickets [3] and at least two employees

---

1. Marriott's employees and suppliers must use the other three entrances (N. T. 69–70).

2. There was testimony that cabs transporting guests had been blocked by pickets and, when they stopped, other pickets talked to the drivers, who then refused to proceed further (N. T. 82).

3. Mr. Najmol, employee of a company servicing the Motel, testified at N. T. 61, as follows:

"Q. Did you go in to do your work? A. No. I had been stopped by one of the men carrying a sign. I asked him what was the trouble, and he said they were having a dispute. I told him I was an exterminator and I was here to service, and he said that no one was going in today.
"Q. And you turned around and went back, is that right? A. That's right."
The other references to the notes of testimony in 4(i) of Document No. 5 give the petitioner reasonable cause to believe

of Marriott were physically stopped by the pickets (N.T. 70–75, 94–95), although they were permitted to proceed after a short delay.[4] In view of Finding of Fact 4(i) on page 3 of Document No. 5, the second proviso to § 8(b) (7) (C) concerning "picketing * * * for the purpose of truthfully advising the public * * * that an employer does not employ members of, or have a contract with, a labor organization" is inapplicable, since "an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services."

The hearing judge recognizes that the approaches taken in Crown Cafeteria, 47 L.R.R.M. 1321, 130 N.L.R.B. No. 68 (1961), relied on by petitioner, and in Kennedy v. Retail Clerks Union Local 324, D.C.S.D.Cal.1961, 194 F.Supp. 131, relied on by respondent, are different. However, the Local 324 Case is far different on its facts from the case now before the court in such matters as the following:

A. The court was careful to point out that no interruption of deliveries could be traced to the pickets (194 F.Supp. at page 137), whereas in this case the picketing had such an effect (see footnote 3).

B. The court also pointed out that there were no pickets at the delivery entrances at the times of deliveries, whereas in this case picketing continued all day at the three entrances for deliveries to the Motel, as opposed to the entrance for the contractors.

C. Petitioner has reasonable cause to believe that pickets effectively told people, by word of mouth, not to cross the picket line in this case (footnote 3), whereas in the Local 324 Case the court said, at page 137 of 194 F.Supp.:

"None of the pickets told anyone, either by word of mouth or otherwise, that they could not or should not cross the picket line."

D. In the Local 324 Case, the court said at page 137, of 194 F.Supp., "in each instance the material was delivered later," whereas in this case the testimony is that some material has still not been delivered. See D–1 and N.T. 56–60.

Furthermore, the United States Court of Appeals for the Third Circuit has pointed out as follows (Schauffler v. Local 1291, 292 F.2d 182, 187):

"Nor need the Board conclusively show the validity of the propositions of law underlying its charge; it is required to demonstrate merely that the propositions of law which it has applied to the charge are substantial and not frivolous."

As pointed out at page 188 of 292 F.2d of the above-mentioned Local 1291 Case, the interesting legal questions raised in the able brief of counsel for respondent (Document No. 8) should be disposed of by the Board and not by this court. See Schauffler v. Local 1357, D.C.E.D.Pa. 1961, 199 F.Supp. 357.

The cases relied on by respondent at pp. 10–13 of its able brief (Document No. 8) are based on different facts than are present in this record, since this petitioner did have reasonable cause to believe

that suppliers have been induced not to make deliveries due to the pickets.

4. Also, the delivery of such items as mattresses and carpets to the Motel, as opposed to the contractors, has been delayed since the Motel has had to send its truck to another location beyond the picket line to receive such merchandise (N. T. 46–48, 90 and 92). Marriott's deliveries of some items of furniture and decor are still being interfered with due to the picketing (D–1 and N. T. 43). Marriott's employees still have to go out to pick up magazines and books [N. T. 68 and 34—the hearing judge has not overlooked respondent's testimony that United News trucks have recently entered the premises (D–3, D–4, P–5 and N. T. 122 & 130), but petitioner is entitled to rely on the specific testimony of the witnesses he produced, as some United News drivers might cross the picket line and not others, and it is not for this court, as opposed to the Board, to determine the facts under such circumstances.]

that the effect of the picketing was to induce individuals (such as Mr. Najmol and the cab drivers on July 12) employed by another person not to pick up, deliver or transport any goods or not to perform any services, whereas the courts in the cases cited on those pages recognized that such reasonable cause would make the second proviso in § 8(b) (7) (C) inapplicable. See, for example, the quotation from Getreu case, Getreu v. Bartenders and Hotel and Restaurant Emp. Union, D.C.N.D.Ind.1960, 181 F.Supp. 738, appearing at the top of page 11 of that brief (Document No. 8). In this connection, the following quotation from Olender, "Standards Picketing Under Section 8(b) (7) (C)," 12 Labor Law Journal 739, 747 (Aug. 1961), relied on by respondent, is pertinent, since petitioner has reasonable cause to believe that this picketing effected "the inducement of stoppages" as those words are used by the author:

"Although the proviso exempts standards picketing where only the remote object is recognition or organization, it does not protect picketing where 'an effect' is the inducement of stoppages. Where there are stoppages, the ultimate objective is not so remote and it is conclusively presumed that the picketing is not for 'the purpose of truthfully advising the public' but that it has as 'an object' recognition or organization. In a sentence, standards picketing is not proscribed so long as it is not so effective as to induce stoppages. Where stoppages are induced, the object of recognition or organization is brought out from the realm of permissible remoteness and the picketing is conclusively presumed to be a means of 'forcing or requiring' recognition or organization."

In view of the portions of the record referred to in Finding of Fact 4(f), respondent's contention that its conduct does not fall within the preamble to § 8(b) (7), 29 U.S.C.A. § 158(b) (7), is refuted by this and other language in

N. L. R. B. v. Local 239, Teamsters, 2 Cir., 1961, 289 F.2d 41, 44:

"The union's argument that its object was not to 'force or require' recognition or organization is premised on the notion that the statutory language contemplates physical violence or threats thereof. But the setting of the language makes it clear that 'forcing or requiring' refers to the intended effect of the picketing, not the manner in which the picketing is carried on, to the 'object,' not the method, and it is clear that the union's object was swiftly to compel organization or recognition, not merely to create a climate in the shop favorable to the union."

The able briefs of counsel have been placed in the Clerk's file as Documents Nos. 7 and 8.