330 F.2d 108
 Ivan C. McLEOD, Regional Director of the Second Region of
The National Labor Relations Board, for and on
behalf of The National Labor Relations
Board, Petitioner-Appellee,
v.
LOCAL 239, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA,
Respondent-Appellant.
 No. 326, Docket 28663.
 United States Court of Appeals Second Circuit.
 Argued March 5, 1964.
Decided March 30, 1964.
 
 Julius G. Serot, Asst. General Counsel, N.L.R.B., Washington, D.C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, and Marvin Roth, Washington, D.C., Attorney, on the brief), for petitioner-appellee.
 Clarles R. Katz, of Katz & Wolchok, New York City, for respondent-appellant.
 Before WATERMAN and KAUFMAN, Circuit Judges, and DIMOCK,* District judge.
 KAUFMAN, Circuit Judge.
 
 
 1
 Posing a question vital to the prosecutorial machinery of the National Labor Relations Board, this appeal challenges the power of the Board's General Counsel to order that a temporary injunction be sought, when the conduct to be enjoined has initially been found by a regional director not to constitute an unfair labor practice.
 
 
 2
 By the terms of 10(l) of the National Labor Relations Act,[1] 61 Stat. 146, 29 U.S.C. 160, the 'officer or regional attorney (of the NLRB) to whom the matter may be referred' is authorized to seek a temporary injunction of conduct which he has reasonable cause to believe is in violation of certain specified sections of the Act. Prominent among these is 8(b)(7)(B), which prohibits organizational and recognitional picketing within twelve months of a valid representational election. In the present case, Abbey Auto Parts Corporation, a wholesale and retail distributor of automobile parts and accessories, filed a complaint with the Board, in which it alleged that the appellant union was engaging in just such illegal picketing. After investigating the matter, the Board's regional director determined that the picketing in question was not for the purpose of securing union recognition or organization, and accordingly declined to issue a complaint on behalf of the Board. As permitted by NLRB regulations,[2] Abbey appealed this decision to the Board's General Counsel, who sustained Abbey's appeal and remanded the case to the regional director 'with instructions to issue an appropriate complaint.' In conformance with these instructions, the regional director promptly issued the complaint and shortly thereafter filed the present petition for a 10(l) injunction, pending Board action on the allegations of the complaint. After a hearing, Judge Bartels concluded that there was reasonable cause to believe that an 8(b)(7)(B) violation had occurred, and the injunction was issued.
 
 
 3
 On this appeal, the union seizes upon the precise wording of 10(l), and vigorously insists that an injunction may be sought only if 'the officer or regional attorney to whom the matter may be referred has reasonable cause to believe (an 8(b)(7)) charge is true.' Noting that the regional director in the present case initially refused to issue the complaint, and did so only when instructed by the General Counsel, the union maintains that the 'officer or regional attorney' did not actually believe in the truth of the charges. Finding the General Counsel's belief in this regard to be irrelevant under the language of 10(l), the union argues that the District Court was without jurisdiction to issue the temporary injunction.
 
 
 4
 There is little dispute as to the relevant facts. On April 15, 1963, at the behest of the company, the NLRB found that Abbey had withdrawn from a multi-employer bargaining unit, and scheduled a representation election for Abbey's employees on May 10. Although participating in an April 26 conference which set the ground rules for the balloting, the union wrote to Abbey on May 3, stating that it was withdrawing its demands for recognition, but would nevertheless picket the company with signs indicating that the shop was non-union. This picketing commenced three days thereafter, and continued until it was enjoined by Judge Bartels. Despite the withdrawal of the union's demands, the election was held on May 10, and Abbey's nine employees voted unanimously against union representation.
 
 
 5
 At the hearing below, four gas station operators who had been customers or Abbey testified that the business representative of appellant union had approached them individually, and had requested that they not deal with the company while the picketing continued. Three of these witnesses further recalled being informed that the union's objective in picketing was organizational; in the words of one, the representative told him that 'they were picketing Abbey's because it was a non-union shop and they wanted to unionize it.' In addition, Abbey's president testified that he had been approached by one of the pickets, who had identified himself as the brother of the union president, and had asked 'when we were going to get together and talk * * * about making a deal as far as signing the contract was concerned.' Finally, the evidence revealed that the picketing had stopped or delayed the delivery of goods to Abbey on at least three occasions.
 
 
 6
 The union did not seek to rebut this evidence, placing no witnesses on the stand, and confining itself to proving that all of the testimony presented below had been before the regional director at the time of his initial refusal to issue the complaint. On the basis of the evidence before him, Judge Bartels concluded that the picketing had an organizational or recognitional objective, that it was in violation of 8(b)(7)(B), and that the issuance of a 10(l) temporary injunction was thus proper. On appeal, the union once again insists that the regional director's orginal refusal to issue the complaint deprived the court of jurisdiction so to hold.
 
 
 7
 Although ingenious, we believe that the union's argument misconceives the clear purport of the Act, and must therefore be rejected. For as the union virtually concedes, we find it manifest that the General Counsel-- and not the regional director-- was intended to have final authority in all matters affecting the Board's prosecutorial machinery. Indeed, congressional intent could hardly have been more clearly evidenced. As enacted in 1947, 3(d) of the Act specifically provides that the 'General Counsel of the Board shall exercise general supervision over all attorneys employed by the Board * * * and over the officers and employees in the regional offices. He shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecution of such complaints before the Board.' 61 Stat. 139, 29 U.S.C. 153.
 
 
 8
 The legislative history of 3(d) leaves little doubt as to its intended significance. In the words of the House Conference Report, 'by this provision responsibility for what takes place in the Boar's regional offices is centralized in one individual, who is ultimately responsible to the President and Congress.' 1 Legislative History of the Labor Management Relations Act 1947, at 541. And as explained by Representative Landis, a House conferee on the bill, 'The General Counsel of the National Labor Relations Board will become the key laborenforcement officer of the Government. He will head the staff in the Regional Offices. He will have the final authority over whether complaints of unfair-labor practices shall be filed against employers or unions.' Id. at 905.
 
 
 9
 Pursuant to this clear legislative mandate, the NLRB promulgated rules and regulations whereby the General Counsel was to exercise his supervisory authority over the local Board attorneys. Thus, it was provided that 'if, after the charge has been filed, the regional director declines to issue a complaint, he shall so advise the parties in writing * * *. The person making the charge may obtain a review of such action by filing a request therefor with the general counsel in Washington, D.C. * * *' 29 C.F.R. 102.19. And it was this very procedure which Abbey followed to secure review of the regional director's action in the present case.
 
 
 10
 Far from evidencing a desire to lessen the powers of the General Counsel, the temporary injunction authorized by 10(l) is a part of a comprehensive attempt to provide expeditious remedies for certain unfair labor practices which might otherwise accomplish their unlawful objectives before the Board could consider their legality in the ordinary course of its business. In furtherance of this end, 10(l) provides that the preliminary investigation of a 8(b)(7) charge is to be given priority over all other cases in the office in which it is filed; if, after such investigation, there is reasonable cause to believe that a violation has occurred, a temporary injunction may be secured. As expressed by the Senate Committee Report on the Section, 'because of the nature of certain of these practices * * * the Committee is convinced that additional procedures must be made available under the National Labor Relations Act in order adequately to protect the public welfare which is inextricably involved in labor disputes.
 
 
 11
 'Time is usually of the essence in these matters, and consequently the relatively slow procedure of Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives-- the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining. Hence we have provided that the Board, acting in the public interest * * * may seek injunctive relief.' 1 Legislative History of the Labor Management Relations Act 1947, at 414.
 
 
 12
 In short, Congress recognized that a final Board determination as to the legality of conduct challenged under 8(b)(7) might well arrive long after the picketing had worked its injury, and it was to forestall this possibility that the expedited procedures of 10(l) were created. At the same time, 3(d) made it quite clear that the General Counsel was to have final authority at all times with respect to prosecuting unfair labor practices on behalf of the Board. Since the decision whether to seek a temporary injunction will, for all practical purposes, be the crucial one, we would frustrate the clear objective of Congress were we to adopt the union's suggestion, and to hold that a regional director's initial refusal to file a complaint precluded the possibility of 10(l) relief, even though the local officer's determination had subsequently been reversed by the General Counsel. Indeed, it would seem entirely arbitrary to find that the General Counsel, who in all other respects exercises supervision over his subordinates in the regional offices, is lacking in final authority over precisely those provisions of the Act which most require prompt and effective enforcement.
 
 
 13
 The Labor Board has made it abundantly clear that no such disruptive result was intended. Thus, in a 'statement of general principles,' published pursuant to the Administrative Procedure Act, the NLRB declared that the 'General Counsel shall exercise full and final responsibility, on behalf of the Board, for initiating and prosecuting injunction proceedings as provided for in Sections 10(j) and (l).' 13 F.R. 655. This ultimate authority in 10(l) cases was, moreover, recently recognized by the Court of Appeals for the Fifth Circuit. In Meekins, Inc. v. Boire, 320 F.2d 445 (5th Cir. 1963), two employers sought a mandatory injunction, in an effort to compel the Board's regional director to petition for 10(l) relief. Noting that the General Counsel must finally determine whether a 10(l) injunction will be sought, and that the employers had not taken an appeal from the regional director's refusal to issue a complaint, the Court dismissed the action on the ground that the plaintiffs had failed to exhaust their administrative remedies. See also Madden v. International Hod Carriers', Bldg. and Common Laborers' Union, etc., 277 F.2d 688 (7th Cir.), cert. denied, 364 U.S. 863, 81 S.Ct. 105, 5 L.Ed.2d 86 (1960) (the scope, conduct or extent of the Board's preliminary investigation is irrelevant in 10(l) cases; only questions for the Court are whether there is reasonable cause to believe that a violation has occurred, and whether an injunction should issue); McLeod, For and On Behalf of N.L.R.B. v. Business Machine & Office Appliance Mechanics Conference Board, etc., 300 F.2d 237, 242 (2d Cir. 1962) (in petitioning for 10(l) injunction, regional director acts as 'representative' of the General Counsel).
 
 
 14
 We have recently reaffirmed the principle that statutes may not be read so as to frustrate their underlying purpose. Monarch Life Ins. Co. v. Loyal Protective Life Ins. Co., 326 F.2d 841 (2d Cir. 1963), cert. denied, 84 S.Ct. 968 (1964). Phrases may not be divorced from their context, nor woodenly applied in a manner which deprives them of their intended significance. See, e.g., Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). With these well-established maxims of statutory construction in mind, our conclusion is inescapable.
 
 
 15
 10(l) does require that a petition for a temporary injunction be filed by an 'officer or regional attorney,' who must have reasonable cause to believe that an 8(b)(7) violation exists; but it does not, as the appellant union would have it, require that the regional director must make a determination of reasonable cause wholly on the basis of his own independent judgment, without the direction of his superior officer. Whatever he may have thought previously, the McLeod who commenced this action for a temporary injunction is the regional director, and in his petition he did allege that he had reasonable cause to believe that an 8(b)(7) violation was taking place. If the union felt that the issuance of an injunction was unwarranted, it should have attempted to prove that reasonable cause did not exist, rather than seeking to psychoanalyze the regional director in an effort to demonstrate that he didn't really believe what he had alleged in his petition. In obeying the instructions of the General Counsel, the regional director was properly acting in conformity with the clearly expressed will of Congress; the wording of 10(l) suggests nothing to the contrary.
 
 
 16
 The evidence presented to Judge Bartels was plainly sufficient to support a finding that the picketing was designed to achieve union organization and recognition. This being the only question properly before him, the issuance of a temporary injunction was entirely correct, and the judgment is affirmed.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 10(l) provides in pertinent part:
 'Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of * * * Section 8(b)(7), the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States * * * for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law * * *.'
 
 
 [2]
 29 C.F.R. 102.19. See infra