**Sidney DANIELSON, acting Regional Director of the Second Region of the National Labor Relations Board for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DRESSMAKERS JOINT COUNCIL, INTERNATIONAL LADIES GARMENT WORKERS UNION, AFL–CIO, Respondent.**

No. 68 Civ. 2008.

United States District Court
S. D. New York.

June 21, 1968.

Winifred D. Morio, N. L. R. B., New York City, for petitioner.

Fellner & Rovins, New York City, for Newport Miss, Inc. and Seymour Terry.

Schlesinger, Schlesinger & Schlesinger, New York City, for respondent.

**58**

MOTLEY, District Judge.

This is a proceeding for a temporary injunction enjoining the respondent labor union from picketing Newport Miss, Inc. (Newport) pending disposition of a complaint filed by Newport charging the union with an unfair labor practice in violation of Section 8(b) (7) (C) of the National Labor Relations Act.[1]

A petition seeking the injunctive relief was filed in this court on June 3, 1968, by the acting Regional Director of the National Labor Relations Board (NLRB) in which he alleges he has reasonable cause to believe the charge filed by Newport is true and that an NLRB complaint based on said charge should issue against the union.

The union filed an answer to the petition on June 6, 1968, in which it denied that petitioner has reasonable cause to believe that Newport's charge is true. The union admitted that it has picketed Newport since January 30, 1968, and is presently picketing Newport. However, the union claims that the picketing has had two lawful objectives—one was to protest the discharge of an employee for union activity; the other was to inform the public that Newport's wages and conditions are below the standards prevailing in the New York dress market.

The union also disclaimed any present interest in organizing Newport. In this connection, the union alleges that on January 25, 1968, it represented a majority (4 out of 5) of Newport's employees who would have been in a unit appropriate for collective bargaining, but it declined the right to call for an election. The union asserts that organization of Newport would not have solved what it views as the major problem in the New York area. The union says that since the five employees do not actually manufacture dresses, it would not have been essential to its objectives to organize Newport. The union alleges that Newport's dresses are manufactured by Newport's contrac-

tors, most of whom have moved to the South. Moreover, says the union, it has secured other employment in union shops for the four former employees of Newport who joined the union in January.

The union further claimed the court is without jurisdiction since there are no proceedings presently pending before the NLRB and, therefore, nothing to enjoin. The union's contention in this regard is bottomed upon the suggestion that since petitioner had not actually issued the complaint against it at the time of the hearing, there are no matters pending before the NLRB.

Finally, the union claims petitioner is guilty of laches. To support this claim the union alleged that on February 28, 1968, the employer filed a charge with the NLRB charging the union with a violation of Section 8(b) (4) (secondary boycott).[2] This charge was amended on March 11, 1968, to the extent of adding other respondents. It was then withdrawn on April 9, 1968, says the union, after the NLRB suggested to Newport that the charge was without merit.[3] The first charge alleging a violation of 8(b) (7) (C) was not filed by the employer until April 4, 1968. The union alleges that no action was taken on this charge. The employer filed an amendment to this charge on May 1, 1968, to include the names of other firms which it alleged were engaged in a joint enterprise with it. Consequently, says the union, since petitioner has waited since April 4, 1968, to seek injunctive relief and has not yet filed a complaint, injunctive relief should be denied. Based upon all of the foregoing, the union's prayer is for dismissal of the complaint and such other relief as seems just.

The petition came on for hearing on June 10, 1968, and continued on June 12, 13 and 14. At the conclusion of the hearing, the court found that the Regional Director had reasonable grounds to believe that one of the objectives of the picketing

1. 29 U.S.C. § 158(b) (7) (C).

2. 29 U.S.C. § 158(b) (4).

3. The evidence disclosed, however, that the charge was withdrawn as to certain named respondents only.

by the union was to compel the employer to recognize the union or to compel its employees to join the union in violation of Section 8(b) (7) (C) and advised that a temporary injunction would issue. The court now makes the following findings of fact and conclusions of law in accordance with the requirements of Rule 52, Fed.R.Civ.P., and enjoins the union as set forth in the accompanying order.

*Findings of Fact and Conclusions of Law*

On April 4, 1968, Newport filed a charge with the NLRB against the union which was amended on May 1, 1968. The employer charged that since on or about February 1, 1968, the union has picketed Newport and various contractors working for Newport. An objective of the picketing, according to the charge, was to force the employer to recognize or bargain with the union or to force the employees to accept or select the union as the bargaining representative. The charge also alleged, and the union admits, that it is not currently certified as the representative of the employees of Newport. It is also a fact that the picketing has been conducted without a petition having been filed as required by the NLRA for an NLRB election. It is also conceded that no charge had been filed with the NLRB under Section 8(a) (2) of the NLRA alleging that the employer had unlawfully recognized or assisted any labor organization.[4]

Newport Miss, Inc., is an employer which in January 1968 employed approximately 14 persons in a business concerned with the production of ladies' dresses. The business is located in an office building on Seventh Avenue in the City of New York in the heart of the garment district. During a period of approximately 6 months to a year, the gross volume of business of the employer which was shipped directly to points outside of the State of New York amounted to approximately three quarters of a million dollars.

The respondent union, Dressmakers Joint Council, International Ladies Garment Workers Union (ILGWU), is a labor organization which has been engaged within this judicial district in transacting its business of promoting and protecting the interest of its members. The Joint Council is composed of delegates from the Joint Board, ILGWU, and from the Eastern and Northeastern regions of the ILGWU. The Joint Board is composed of delegates from five locals of the union.

In January 1968, the Joint Council commenced a campaign to organize the employees of Newport and to compel Newport to recognize the union as the collective bargaining agent of its employees. Four employees were "signed up" by a representative of the union during the month of January. Thereafter, on January 29, 1968, one of the employees was discharged. The union, on January 30, 1968, filed an unfair labor practice complaint with the NLRB charging the employer with discharging an employee, Rogelio Pizzaro, for soliciting union memberships and simultaneously commenced picketing Newport. The picket signs charged that Newport was guilty of an unfair labor practice. Some of the pickets stopped some of the employees from entering Newport and stopped deliveries of goods to Newport. In addition to picketing the employer, the union picketed two contractors in February 1968 when these contractors refused to stop working for Newport. The pickets also prevented deliveries to and from these contractors. Representatives of the union advised each of these contractors that the union was picketing Newport in order to organize its employees and to compel recognition. The contractors were asked to cooperate with the union by refusing to do any work for Newport.

On February 29, 1968, the union's unfair labor charge was settled unilaterally by the employer with the approval of the NLRB. In the settlement agreement the

4. 29 U.S.C. § 158(a) (2).

**60**

employer agreed to post a notice on its premises for 60 days stating that it would not lay off or refuse to recall or discharge any employees for anti-union reasons; that it would reinstate the discharged employee with back pay; and that it would not interfere with the rights of its employees to join the union. The settlement agreement also provided that by entering into the settlement the employer did not admit to a violation of the NLRA.

Thereafter, on March 1, 1968, the union filed another unfair labor practice complaint with the NLRB charging that the employer had refused to reinstate Pizzaro and three other employees. This complaint was dismissed on the merits after investigation by the NLRB. The union appealed to the General Counsel of the NLRB who affirmed the dismissal on May 15, 1968. This was about 60 days after Newport posted the notice which it had been required to post for a 60-day period by its settlement agreement with the NLRB. The notice was not posted until March 16, 1968.

After the notice came down and its second unfair labor practice complaint was finally dismissed, the union changed signs and continued its picketing of Newport. The new signs charged Newport with wages and conditions below those prevailing in the area. This picketing is presently in progress at Newport.

Newport's business has been drastically reduced by the picketing because of a refusal of various companies to deliver goods. Very little business is being conducted at the present time. The contractors who were picketed by the union also experienced serious financial difficulties when their shipments were stopped. They also found themselves in serious economic straits during the time when they temporarily agreed to work for other manufacturers or jobbers and to suspend working on goods which they had in their possession for Newport.

■ It seems clear from the testimony that unless a temporary injunction is issued this irreparable injury to the em-

ployer, the contractors, and the public interest will continue. The court finds that there was more than sufficient evidence from which the Regional Director could conclude that the charge filed by the employer against the union alleging a violation of Section 8(b) (7) (C) of the NLRA is true. A temporary injunction must, therefore, issue as it has in similar cases. McLeod v. Local 239, International Bro. of Teamsters, 330 F.2d 108 (2d Cir. 1964); NLRB v. Local 239, International Brotherhood of Teamsters, 289 F.2d 41 (2d Cir. 1961), cert. denied, 368 U.S. 833; Vincent v. Steamfitters Local 395, 288 F.2d 276 (2d Cir. 1961); Douds v. Milk Drivers & Dairy Employees Union, 248 F.2d 534 (2d Cir. 1957); Douds v. International Longshoremen's Ass'n, 242 F.2d 808 (2d Cir. 1957); Douds v. International Longshoremen's Ass'n, 241 F.2d 278 (2d Cir. 1957); McLeod v. Local 478, International U. of Operating Engineers, 278 F.Supp. 22 (D.C.1967); McLeod v. Local 239, International Broth. of Teamsters, 179 F.Supp. 481 (E.D.N.Y.1960); McLeod v. Local 239, Internat'l Bro. of Teamsters, etc., 180 F.Supp. 679 (E.D.N.Y.1959).

■ There is no merit to the union's contention that the court is without jurisdiction because a complaint has not yet issued. The petitioner's attorney advised the court that a clerical lag was the only reason for the petitioner's failure to issue a complaint. This court clearly has jurisdiction of the parties and the subject matter of the petition despite the fact that the petitioner has not yet issued his complaint against the union. Section 10 (*l*) of the NLRA, 29 U.S.C. § 160(*l*).

■ The court does not find that under the circumstances of this case petitioner is guilty of laches. However, the court is of the opinion that the union is entitled to reasonable expedition of the determination of the employer's charge. The temporary injunction, therefore, will enjoin the picketing for a period of 60 days from the date of the injunctive order or until the petitioner finally determines the merits of the pending charge, whichever is sooner. McLeod for

and on Behalf of N.L.R.B. v. Local 282, Internat'l Bro. of Teamsters, etc., 241 F. Supp. 831 (E.D.N.Y.1964); McLeod v. Local 239, Internat'l Bro. of Teamsters, etc., 182 F.Supp. 949 (E.D.N.Y.1960).